53 N.J. Super. 90 (1958)
146 A.2d 692
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, A CORPORATION, AND JOSEPHINE L. ACERRA, EXECUTRIX OF THE ESTATE OF DOMENIC B. ACERRA, JR., DECEASED, PLAINTIFFS,
v.
METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, A CORPORATION, FRED J. DUNCAN, BRUNO TALERICO, JAMES MOYERS, HELEN C. SMITH, ADMINISTRATRIX OF THE ESTATE OF BENJAMIN E. SMITH, DECEASED, AND JENNIE CALANDRIELLO, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 8, 1958.
*91 Messrs. Schneider, Lustbader & Morgan, attorneys for plaintiff Indemnity Ins. Co. (Mr. Philip M. Lustbader appearing).
Messrs. Quinn, Doremus, McCue & Russell, attorneys for plaintiff Josephine L. Acerra (Mr. Benedict R. Nicosis appearing).
Messrs. Zimmer & Selikoff, attorneys for defendants Metropolitan & Calandriello (Mr. Frank P. Zimmer appearing).
Mr. John P. Arnone, attorney for defendant Fred J. Duncan.
Mr. David L. Greene, attorney for defendant Bruno Talerico.
Messrs. Applegate, Reussille, Cornwell & Hartman, attorneys for defendant James Moyers (Mr. Samuel Carotenuto, appearing).
*92 Messrs. Durand, Ivins & Carton, attorneys for defendant Helen C. Smith, etc.
Mr. George Gray, attorney for defendant Fred J. Duncan.
KOLOVSKY, J.S.C.
On September 29, 1955, at about 8:30 P.M., a Cadillac automobile owned by Jennie Calandriello and travelling in an easterly direction on Newman Spring Road in Middletown Township, Monmouth County, left the highway and crashed into a tree. Two of the occupants of the automobile, Domenic B. Acerra, Jr., who had been driving, and Benjamin E. Smith who had been sitting in the right front seat, were killed; the other three occupants, Fred J. Duncan, James Moyers, and Bruno Talerico, were injured.
On October 20, 1958, many months after the instant proceeding seeking a declaratory judgment was started in this court, jury verdicts totalling $29,500 were returned in the Monmouth County Court against Josephine L. Acerra, as executrix of the estate of Domenic B. Acerra, Jr., and in favor of Duncan, Moyers, Talerico, and the administratrix ad prosequendum of Smith in actions instituted to recover for the injuries and death resulting from the accident.
The ultimate question to be decided by this court is which of two insurance companies, plaintiff Indemnity Insurance Company of North America, hereinafter called "Indemnity," or defendant Metropolitan Casualty Insurance Company of New York, hereinafter called "Metropolitan," is required to pay the judgments and expenses incident to the defense of the law actions; or if both, in what proportion. The limits of each policy far exceed the total of the judgments recovered.
Plaintiffs Indemnity and Josephine L. Acerra, as executrix of the estate of Domenic B. Acerra, Jr., contend that at the time of the accident, there were in force two automobile liability policies which afforded liability insurance coverage to Acerra as the driver of the automobile involved in the accident.
*93 One policy, issued by plaintiff Indemnity to Domenic B. Acerra, Jr., hereinafter called "Acerra," not only covered the automobile owned by Acerra described therein, but also by "Insurance Agreement V" thereof, provided insurance protection to Acerra, the named insured, while he was driving an automobile other than the one owned by him, subject however to the provisions of the "other insurance" clause of the policy which read in part as follows:
"If the insured has other insurance against a loss covered by this policy * * * the insurance with respect to * * * other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."
The other policy, written by defendant Metropolitan, covered the Cadillac involved in the accident and designated Jennie Calandriello, the owner of that automobile, as the "Named Insured." Under that policy Metropolitan agreed, among other things,
"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.";
and to
"defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."
The benefits of the quoted agreements were not limited to the named insured, Jennie Calandriello; the policy contained an "omnibus clause," in which the word "Insured" was defined as follows:
"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `Insured' includes the Named Insured and also includes any person while using the automobile *94 and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or with his permission. * * *" (Italics supplied.)
The Metropolitan policy also embodied an "other insurance" clause under which, with respect to an accident involving the insured automobile,
"If the Insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss * * *."
Plaintiffs contend, and defendant Metropolitan denies, that the evidence in this case establishes that Acerra was an additional insured within the quoted definition of "Insured" found in the Metropolitan policy. If defendant Metropolitan is correct, then it has no liability unless, as plaintiffs also contend, Metropolitan is estopped from denying coverage because it at first undertook the defense of the actions brought against Acerra's executrix.
On the other hand, if Acerra was an additional insured under the Metropolitan policy, then Metropolitan has the primary liability; Indemnity's only liability is that of an excess insurer; that liability has not arisen because the limits of the Metropolitan policy have not been exceeded; and the Indemnity policy does not constitute "other insurance" within the meaning of the "other insurance" clause of the Metropolitan policy. American Surety Company of New York v. American Indemnity Company, 8 N.J. Super. 343 (Ch. Div. 1950); New Jersey Asphalt & Paving Co., Inc. v. Mutual Boiler Insurance Co., 19 N.J. Super. 445 (Law Div. 1952).
As was said by Judge Jayne in American Surety Company of New York v. American Indemnity Company, 8 N.J. Super., at page 349:
"* * * where the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess *95 coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability. In such a situation, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It follows that the so-called other insurance clause in the primary policy excluding or modifying liability if the additional insured has other valid and collectible insurance is inapplicable because the insurance under the excess coverage policy is not to be regarded as other collectible insurance available to the insured until the primary policy has been exhausted."
From the testimony adduced at the trial before me it appears that Jennie Calandriello and her husband were respectively treasurer and president, as well as stockholders and active employees, of Seacoast Liquor Distributors, Inc., a wholesale beer distributor, with a place of business in Monmouth County. Seacoast sold Schmidt's beer to taverns throughout that county; among them was the "Silver Bar" owned by Acerra and in which Talerico was employed as a bartender.
As a regular part of its program of sales promotion and public relations, Seacoast arranged to have its salesmen take parties of its customers and their employees and friends from Monmouth County to Schmidt's Brewery in Philadelphia, where they were treated to a tour of the brewery, a luncheon, and incidental refreshments.
Two such parties had been arranged for, and started out on, the morning of September 29, 1955. One group, made up of Smith, one of Seacoast's salesmen, Acerra, Talerico, Duncan, and Moyers travelled in Mrs. Calandriello's Cadillac, which had been used for the same purpose on previous occasions.
Mrs. Calandriello testified that she knew that the Acerra party was to be in her car; that she had given Smith the keys to the car early on the morning of September 29; that although on that occasion nothing was said as to who was to do the driving, on previous occasions she had told Smith that he was never to let any one else drive her car. She had never given Smith any instructions as to what should happen if he became sick and was unable to drive.
*96 Smith, after leaving the Calandriello home in Fairhaven, picked up Talerico and Duncan, then went to Red Bank where Moyers lived, and finally to Little Silver where Acerra joined the party. From there they proceeded to Schmidt's Brewery in Philadelphia with Smith driving all the way.
A guided tour of the brewery ended at 2:30 P.M., with a free sampling of the brewery's product, and was followed by highballs or cocktails and lunch at a rathskeller which adjoined the brewery. At about 4 P.M., the party left the dining room and adjourned to an upstairs room to have some more drinks and watch the televised broadcast of a World Series game. Smith left the group for some 20 minutes and on his return, shortly after 4:30 P.M., they started home, with Smith driving.
There is no claim that there was any deviation from the direct route back from Philadelphia to the homes of the members of the party. However, two refreshment stops were made enroute. The first, soon after they left the New Jersey Turnpike, was at a tavern known as "Eleanors" situate at Hightstown; there they remained for an hour from approximately 5:30 P.M. to 6:30 P.M. The second, at 7:30 P.M., or thereabouts, was at "Mary Ann's," a tavern in Colt's Neck.
Smith had done all the driving until the group reached "Mary Ann's." But when they left "Mary Ann's," shortly after 8 P.M., to continue on toward Red Bank, Acerra was at the wheel, with Smith sitting in the seat to the right of the driver.
Exactly how this came about is not clear; the only testimony relating to it is that of Talerico who says that he noticed the car keys on the bar and heard a discussion or argument between Acerra and Smith, with Acerra saying that he wanted to try out the Cadillac and Smith saying that he, Smith, was going to drive. Smith and Acerra were the last to leave "Mary Ann's." Acerra sat behind the wheel, Smith at his right. The inference to be drawn from the testimony is that despite his earlier voiced objection, Smith consented to Acerra's taking the wheel.
*97 At about 8:20 P.M., the automobile stopped at a gas station in Lincroft but no one left the vehicle. The trip to Red Bank resumed, and some ten minutes later the automobile, which had been travelling 60 to 70 miles an hour, left the highway and crashed into a tree.
Defendant Metropolitan contends that Acerra is not an added insured under the omnibus clause of its policy which requires that "the actual use of the automobile [be] by the Named Insured or with his permission," because the evidence does not establish that Acerra had Mrs. Calandriello's permission or consent to drive her automobile.
In my opinion the language of the omnibus clause does not require plaintiffs to establish that the named insured had expressly or impliedly given Acerra permission to drive or operate her automobile; all that they must show is that the actual or particular use, i.e., the purpose for which it was being employed by Acerra at the time of the accident, was with the permission of the named insured, Mrs. Calandriello. Maryland Casualty Company v. Marshbank, 226 F.2d 637 (3 Cir. 1955); Schimke v. Mutual Auto Ins. Co., 266 Wis. 517, 64 N.W.2d 195 (Sup. Ct. 1954); Standard Accident Insurance Company v. New Amsterdam Casualty Co., 249 F.2d 847 (7 Cir. 1957); Donovan v. Standard Oil Co. of Louisiana, 197 So. 320 (La. App. 1940); Conrad v. Duffin, 158 Pa. Super. 305, 44 A.2d 770 (Super. Ct. 1945); see Loffler v. Boston Ins. Co., 120 A.2d 691 (Ct. App. D.C. 1956); see Arcara v. Moresse, 258 N.Y. 211, 179 N.E. 389 (Ct. App. 1932).
Maryland Casualty Company v. Marshbank, supra, involved a policy with an omnibus clause identical with that found in the Metropolitan policy in this case. The named insured, Robert S. Marshbank, had given his automobile to his son Robert, Jr., to enable him and a friend Charles N. Hoak, Jr. to take two girl friends to a moving picture theatre. On the way to the theatre Robert, Jr., who had been driving, turned the wheel over to his friend Charles, and it was while he was driving that the accident occurred. In affirming that Charles was an additional insured within the *98 language of the omnibus clause, Circuit Judge Maris said at 226 F.2d 637:
"* * * The answer to that question turns upon whether the use of the automobile which Charles was making at the time of the accident was with the permission of the named insured, Marshbank, within the meaning of the definition of `insured' contained in the policy. We think that the district court rightly decided that Charles' use of the automobile was with Marshbank's permission and that he was, therefore, entitled to the protection of being an additional insured under the policy in connection with the accident which occurred on May 15, 1954.
As the basis for a contrary conclusion the plaintiff seeks to read the term `use of the automobile' as contained in the policy definition as the equivalent of `operation of the automobile' and on this premise it argues that Marshbank did not give permission to Charles to operate his automobile. We think, however, that the premise is unsound and that the plaintiff is attempting to create an ambiguity in the language of the policy definition in order by construction to resolve it in its favor. To us the language of the clause seems so clear as to require no construction. The fallacy in the plaintiff's position is that the words `use' and `operation,' which it seeks to equate as synonymous, are in this setting words of quite different meaning. For the `use' of an automobile by an individual involves its employment for some purpose or object of the user while its `operation' by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another.
It is only the actual or particular use of the automobile at the time of the accident by the individual who is claiming to be an additional insured that he must show to have been with the permission of the named insured if he is to come within the definition of the policy here involved. Accordingly since it was proved that Charles had such permission it was unnecessary to show that he also had permission to act as driver of the automobile. This is the view taken generally in this country and it is the view adopted by the Pennsylvania courts, which in this case is controlling. * * *."
Even if the language of the clause were ambiguous, this would not aid Metropolitan for "* * * [it is] settled doctrine that such an insurance contract is to be liberally construed for the protection, not only of the named insured and those within its omnibus clause, but also the innocent plaintiff who was injured by the negligent operation of the *99 insured automobile along a public highway." Eggerding v. Bicknell, 20 N.J. 106, 113 (1955); cf. R.S. 39:6-62.
The named insured, Mrs. Calandriello, had granted permission to use her Cadillac automobile for the purpose of transporting Smith, Acerra, Talerico, Duncan, and Moyers to the Schmidt Brewery in Philadelphia and return. Since this was the very purpose for which the automobile was being used by Acerra at the time of the accident, he was an additional insured within the omnibus clause of the Metropolitan policy.
It is not necessary for plaintiffs to show that Acerra had Mrs. Calandriello's permission to drive the automobile. The requirement that the actual use of the automobile be with the permission of the named insured "relates only to the use of the vehicle not to the identity of the person actually driving it." Donovan v. Standard Oil Company of Louisiana, 197 So. 320 (La. App. 1940). The policy does not provide, as did many policies issued in former years, that a person seeking to qualify as an additional insured must show that he had permission to drive or operate the automobile from the named insured. Appleman, Insurance Law & Practice (1942), section 4314. Decisions involving such policies, some of which are cited in defendant's brief, are not pertinent to the question here involved.
Cronan v. Travelers Indemnity Co., 126 N.J.L. 56 (E. & A. 1940), which defendant Metropolitan says is controlling, is clearly distinguishable. The son of the named insured had his father's permission to use the automobile to take a group of friends to a picnic at Weston's Mill near New Brunswick. While the rest of the party remained at Weston's Mill, one Horvath took the automobile, with the son's permission, and drove off with a girl friend towards South River, where he hoped to find a refreshment counter. The accident occurred on the way to South River. Since the automobile was being used at the time of the accident for a trip by Horvath and his girl friend to South River, a use other than the one for which the named insured had given his permission, viz., the transportation of his son and *100 friends to the picnic, the court held that Horvath was not an additional insured under the omnibus clause of the father's policy.
Moreover, even if the permission granted by Mrs. Calandriello to use her automobile for the trip to Philadelphia and return be construed to require a showing that Smith, Seacoast's salesman, was using the car for the permitted purpose at the time of the accident, that requirement has been met. Though Acerra was driving, and this in alleged violation of the instructions given by Mrs. Calandriello to Smith that no one but Smith was to drive her car, still, at the time of the accident, Smith was using the automobile with Mrs. Calandriello's permission for the permitted use or purpose; he was, to quote the words of Chief Judge Cardozo of the New York Court of Appeals in Grant v. Knepper, 245 N.Y. 158, 165, 156 N.E. 650, 652, 54 A.L.R. 845 (1927), "still the director of the enterprise, still the custodian of the instrumentality confided to his keeping, still the master of the ship." Arcara v. Moresse, 258 N.Y. 211, 179 N.E. 389 (Ct. App. 1932); Brown v. Kennedy, 141 Ohio St. 457, 48 N.E.2d 857 (Sup. Ct. 1943); Loffler v. Boston Ins. Co., 120 A.2d 691 (Ct. App. D.C. 1956). Arcara v. Moresse, supra, involved a provision of the New York Vehicle and Traffic Law, McKinney's Consol. Laws, c. 71, § 59, which imposes liability upon the owner of a motor vehicle for death or personal injuries resulting "from negligence in the operation of such motor vehicle * * * by any person legally using or operating the same with the permission, express or implied, of such owner." In that case, the defendant owner had loaned his automobile to his nephew Maggio; Maggio was in the automobile when the accident occurred, but it was being driven by one Barone, with Maggio's permission. The proofs established that when he gave his nephew permission to use the automobile, defendant had told his nephew that he must not let Barone or any person other than himself drive the automobile. In holding that under the cited statute the owner of the automobile *101 was liable for damages resulting from Barone's negligent driving, the court said (per Kellogg, J.):
"We think that Maggio was at the time `using' the car, though Barone was driving, for Maggio `did not abandon the car or its use when he surrendered to another the guidance of the wheel'; he was `still the director of the enterprise, still the custodian of the instrumentality confided to his keeping, still the master of the ship.' Per Cardozo, C.J., in Grant v. Knepper, 245 N.Y. 158, 165, 156 N.E. 650, 652, 54 A.L.R. 845. We think, also, that Maggio was at the time using the car with `the permission' of the defendant owner. True it is that, if the collision had occurred in a territory where use had been expressly proscribed by the owner, Maggio would then have been using the car without permission. Chaika v. Vandenberg, 252 N.Y. 101, 169 N.E. 103. Nor would it have been a permitted use if Maggio, against the express instructions of the owner, had employed the car to provide a pleasure trip for Barone. Psota v. Long Island R. Co., 246 N.Y. 388, 159 N.E. 180, 62 A.L.R. 1163. An owner in loaning his car may reasonably restrict the uses to which it may be put; consequently its employment for a proscribed purpose cannot be a permitted use. On the other hand, if the limiting instructions relate to the manner of operation, such as the speeding or careless pilotage of the car, though the instructions be disobeyed, nevertheless the use is with `permission' of the owner. Maggio was not instructed that Barone should not be accepted as a guest; he was merely told that Barone must not drive. The thing forbidden related to the operation of the car, not to the use which might be made of it. We conclude that Maggio was `using' the car with the `permission' of the owner."
My determination that Acerra was an "insured" under the omnibus clause of the Metropolitan policy makes it unnecessary to consider whether, as plaintiffs contend, Metropolitan would in any event be estopped to deny coverage because it had at first undertaken the defense of the actions brought against Acerra's executrix and had not disputed any liability under its policy until some time later.
Submit judgment.