Doris Hays (Caudle), Plaintiff-Appellant, v. Country Mutual Insurance Company, a Corporation, Defendant-Appellee.

Gen. No. 10,399.

Third District.

October 22, 1962.

Rehearing denied December 11, 1962.

1

Ryan & Heller, of Mattoon, for appellant.

J. E. Horsley, John P. Ewart of Craig & Craig, of Mattoon, for appellee.

ROETH, JUSTICE.

Plaintiff recovered a judgment against one Thomas Hargis for injuries sustained in an automobile collision, while a passenger in the automobile being driven by Hargis. Plaintiff then commenced this suit against the defendant Country Mutual Insurance Co., upon a policy of insurance issued by defendant to one Stanley Daily covering the automobile in which plaintiff was riding, claiming to be an additional insured under said policy. The trial court directed a verdict for defendant at the close of plaintiff's evidence and this appeal followed. This case presents the question of how far the omnibus clause in defendant's contract of insurance extends the coverage.

At the outset it is to be noted that in the Schedule of Warranties made a part of the policy the purpose for which the motor vehicle is to be used is designated as business or pleasure of the insured. Section 1 of the policy provides the coverage ordinarily

referred to as public liability coverage. The additional interests clause (omnibus clause) provides as follows:

"Additional Interests: The insurance provided in Section 1 by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named insured, to any person or persons while riding in or operating the motor vehicle described in this policy when such motor vehicle is being used for the purpose and in the manner described in this policy. Such insurance shall also extend to any policy holder of the company who is insured against the perils described in Section 1 of this policy, the Illinois Agricultural Association, any County Farm Bureau in the State of Illinois or any association or corporation associated or affiliated with any County Farm Bureau of Illinois or Illinois Agricultural Association, if legally responsible for the operation of such motor vehicle. The coverage hereby afforded shall not apply unless the riding, use or operation above referred to be with the permission of the insured named in the policy, or if such insured is an individual, with the permission of any adult member of such insured's family, nor unless such person, association or corporation shall comply with all provisions regarding notice, information, affidavits, proof of loss and cooperation and other requirements of the insured."

The exclusions to section 1 clause provides in part as follows:

"The company shall not be liable under section 1 of the policy, unless specifically endorsed hereon for: . . . (2)(d) any person riding in motor vehicle described herein without the express or implied consent of insured or of an adult member of insured's family."

3

Counsel for plaintiff contend that the use of the words "express or implied consent of the insured" in the exclusions clause and the absence of those words in the additional interests clause creates an ambiguity in the policy which should be resolved against the company so as to regard the permission referred to in the additional interests clause as being capable of being conferred *either* expressly or by implication. Counsel for defendant do not contend that permission must be only express permission. We do not regard the policy as being ambiguous. In our opinion permission under the additional interests clause may be either express permission or implied permission.

We now proceed to a consideration of plaintiff's evidence. Since counsel draw different inferences from some of this evidence we shall comment on their respective contentions as we detail the evidence. Stanley Daily and his wife lived on a farm near Sullivan. Four children resided with them, namely, Eleanor Slover, 16, a daughter of Mrs. Daily by a former marriage, Roger Daily, 15, Janet Daily, 11, and the youngest child, Aggie. About two or three weeks prior to November 5, 1955, the night of the occurrence in question, Eleanor Slover had received her driver's license. Eleanor had a date in town that night and Roger and Janet wanted to go to the show. Roger Daily testified that after supper Eleanor Slover said this to Stanley Daily:

> "She asked Father if we could use the car that Saturday night because she'd got her license and she had never been to town or drove before by ourselves and she asked him if we could take it to town."

He further testified that:

> "There was a hesitation whether he'd let us or not and then he said it would be okay if we took it and parked it on the square and not drive

4

around just to go to the show and come out and go home. He also said at that time Eleanor was to drive."

It is true from the foregoing that Stanley Daily undertook to limit the purpose for which permission was being granted, to driving to town, parking the car, going to the show and coming home. However, it is important to realize that the purpose for which permission was being granted falls within the broad category of a social or pleasure purpose. Thus permission was granted to use the car for social or pleasure purposes.

It is important to note at this point that Illinois has adopted and adhered to the so-called initial permission rule. Konrad v. Hartford Acc. & Indemnity Co., 11 Ill App2d 503, 137 NE2d 855. Under the rule announced in this case, when Stanley Daily gave permission to Eleanor Slover to use the automobile, any use of the automobile by Eleanor Slover while it remained in her possession is with Stanley Daily's permission under the omnibus clause and any attempt by Stanley Daily to limit the permission to use by Eleanor Slover was ineffective.

Proceeding further, the record shows that Roger had a limited driving permit. Although he had driven the car prior to the night in question, it was only within the limitations of his permit, i. e., between 7:00 a. m. and 7:00 p. m. on the farm where he lived. Eleanor had a regular driver's license. It is a fair inference that Stanley Daily was aware of these facts. We are of the opinion that the only reasonable inference that can be deduced from the foregoing evidence is that permission was not granted to Roger to use the car but only to Eleanor. We are also of the opinion that the only reasonable inference that can be deduced from the foregoing evidence is that the reference to Eleanor driving by Stanley Daily was a limitation only on who was to drive *as between Eleanor and Roger* and was not

5

tantamount, as counsel for defendant contends, to an absolute prohibition of anyone other than Eleanor operating the automobile.

The three young people left the farm with Eleanor driving and proceeded to Sullivan. In Sullivan they drove up to the Hargis Hardware store and stopped. Thomas Hargis and his brother Barry, with whom Eleanor had her date, were working in the store. Barry and Thomas with another youth named Stanley Guin, came out to the Daily automobile. Thomas and Barry got into the car. Thomas Hargis and Roger Daily were good friends, had hunted together, played football together and gone to parties together. Thomas Hargis had on prior occasions driven this same Daily automobile. Thomas asked Roger if they could use the automobile. After some discussion about the gasoline situation Roger said okay and that he would park it for Thomas. Later that evening Thomas and Stanley Guin met the plaintiff and another girl and the four young people started to the town of Lovington to go to a basketball game. Upon reaching Lovington they changed their plans and turned around and started back to Sullivan. On the way back the collision occurred while Thomas Hargis was driving.

Having heretofore concluded that permission to drive the automobile in the first instance was only granted to Eleanor Slover, it becomes necessary to determine whether Eleanor Slover granted permission to drive the automobile to Thomas Hargis. It is recognized that the conversation over the use of the car was between Thomas Hargis and Roger Daily. However, Eleanor Slover was present but said nothing. This same question arose in American Employers Ins. Co. v. Cornell (Ind App), 73 NE2d 70. In that case the owner of an automobile permitted her husband to use her automobile. While the husband was in his wife's presence, a friend of the husband requested permission to use the car. The husband granted permission and the

6

wife said nothing. The court concluded that her failure to speak, object or prevent the use of the car was implied permission by her to use it. Eleanor Slover was in a position to refuse and prevent the use of the automobile. She said nothing and did nothing to do so. We therefore conclude that the use of the automobile by Thomas Hargis was with the permission of Eleanor Slover.

With regard to coverage of a second permittee, i. e., one driving with permission from the first permittee who has permission to use the automobile from the named insured, we find two Illinois cases and one Circuit Court of Appeals case decided in the 7th Circuit interpreting Illinois law, which deal with the problem. These cases are Cocos v. American Automobile Ins. Co., 302 Ill App 442, 24 NE2d 75, Standard Acc. Ins. Co. v. New Amsterdam Cas. Co., 249 Fed2d 847, and Fireman's Fund Indemnity Co. v. Freeport Ins. Co., 30 Ill App2d 69, 173 NE2d 543. There is no similarity in the facts in these three cases nor do any of them present the factual situation presented in the case before us. The Cocos case was decided in 1939. In this case a corporate owner of an automobile gave its employee permission to use one of its automobiles with express instructions that it was to be used solely for business purposes and by no other person. The employee gave his son permission to use the car for a Christmas night visit to his uncle. While enroute the son was involved in a collision. The court held that this prohibited use was not with the permission of the owner and that the policy did not cover the liability of the son. An analysis of this case reveals that this result was reached primarily on the theory that to hold otherwise would materially increase the risk of the insurance company. The courts in the Standard Accident case and the Fireman's Fund case, under different factual situations, were able to arrive at different conclusions from that in the Cocos case, and to

7

extend coverage of the omnubus clause to the second permittee, without reference to the increased risk theory. None of these cases formulate any general all inclusive rule which can be applied with any degree of uniformity. A myriad of fact situations can arise, as demonstrated by the case at bar, which are unanswered by these cases.

 In the years that have intervened since the decision in the Cocos case, there has been a growing tendency on the part of the courts the country over, to adopt a liberal view as to the coverage afforded by the omnibus clause of liability policies. Consideration has been given to the public generally. At best, the increased risk theory is unrealistic. The generally recognized approach of courts is that the coverages of auto liability policies are to be liberally interpreted to effect a purpose of the issuance of such policies, namely to provide indemnity to those who may suffer bodily injury, death or property damage by the negligent operation of motor vehicles. Such an approach reflects a clear cut policy to protect the public. We therefore hold that where a person is given permission to use an automobile by the owner, and that person permits its use by another, the use by the second permittee is deemed to be with the permission of the owner so as to afford coverage to the second permittee under the omnibus clause. In view of the foregoing, other contentions of counsel for plaintiff need not be considered.

Accordingly the judgment of the Circuit Court of Coles County is reversed and the cause is remanded for new trial.

Reversed and remanded.

CARROLL, J., concurring.

REYNOLDS, P. J., dissenting.