**NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, a corporation, Plaintiff,**

v.

**STATE FARM MUTUAL AUTO INSURANCE COMPANY, a corporation, Judy Sharon Madsen, by Anna Madsen, her guardian ad litem, Patricia Draeger, and Daniel McMillan, Defendants.**

**Civ. No. 2706.**

United States District Court
D. Montana,
Havre-Glasgow Division.

Dec. 26, 1967.

Smith & Emmons, Great Falls, Mont., for plaintiff.

Hughes & Bennett, Helena, Mont., for defendants.

## ORDER AND MEMORANDUM OPINION

JAMESON, Chief Judge.

This is an action for declaratory judgment to determine whether the plaintiff or the defendant State Farm Mutual Auto Insurance Company has the obligation to defend a personal injury action in state court in which Judy Sharon Madsen, by Anna Madsen, her guardian ad litem, is plaintiff and Patricia Draeger and Dennis McMillan are defendants, arising out of an accident which occurred on October 14, 1966. The case was tried before the court without a jury on October 16, 1967, and both parties have filed post trial briefs. There is little dispute in the revelant facts.

Herbert Freier, a well drilling contractor, resides on the north edge of Havre, with his wife and two daughters, Sharon and Barbara. The Freiers own three motor vehicles—a pickup used by Mr. Freier in his work, an Oldsmobile sedan used primarily by Mrs. Freier in going to and from her work, and a 1962 Chevrolet Impala. This vehicle, sometimes called a Super Sport, was white, with red interior, bucket seats, and manual floor shift.

The Chevrolet Impala was purchased on July 5, 1966, and title was taken in the names of Mr. and Mrs. Freier. It was admittedly purchased, however, for the use of the daughters. Sharon entered college in Bozeman, Montana, in Septem-

ber. Thereafter Barbara treated the car as her own. She used it in going to and from school and school functions, and on trips to town. She had her own set of keys and was not required to ask permission from the parents to use the car. If she had permission to go anywhere, she had permission to use the car. Mrs. Freier testified that she had driven the car only once because she did not like the floor gear shift. Mr. Freier had driven it on a few occasions.

Both parents had instructed Barbara that she was not to allow anyone else to drive the car. It is clear that this instruction was not followed on several occasions prior to the October 14 accident. The car was very attractive to Barbara and her friends, who constantly importuned her to permit them to drive. Usually she permitted them to drive the car for a short period of time in "cruising the drag" on Havre streets, with Barbara in the car. On one or two occasions friends were permitted to drive when Barbara was not in the car herself. Mr. and Mrs. Freier and Barbara all testified that neither Mr. nor Mrs. Freier was aware of the fact that Barbara had permitted her friends to drive the car.

October 14, 1966, was homecoming day at Havre High School, with numerous festivities, including a parade. Patricia Draeger was in charge of the arrangements for the parade. Barbara Freier and her friend Zora Hellebust were desirous of riding horses in the parade. Prior attempts to obtain horses had failed. On the morning of the parade Barbara asked Patricia to help her get a horse. Patricia testified that she told Judy Madsen of the desire of Barbara and Zora to ride in the parade, and Judy offered the use of two horses which were kept a short distance north of Havre. Barbara testified that both she and Patricia asked Judy about the horses. Judy testified that Patricia talked to her and that Patricia or Barbara asked if horses could be borrowed for the homecoming parade for the use of Barbara and Zora. Through another student, Jane Sterrett, arrangements were made to obtain a horse trailer from the Sterrett residence.

Both Barbara and Patricia had cars at school. Patricia's stationwagon had a trailer hitch on it, and there was no hitch on Barbara's car. Accordingly the girls used Patricia's car to get the trailer and horses. Accompanied by Judy they went first to the Sterrett place, where the trailer was attached to the stationwagon by Mrs. Sterrett with the use of a jack. The horses were then transported to the Ruby residence about four blocks from the high school, unloaded and placed in a barn. Later Patricia saddled the horses, while Barbara and Zora held them.

Shortly before the parade started, Patricia, Barbara and Zora went to the Ruby place, and Barbara, Zora and Rick Ruby left for the parade on their horses. The horse trailer was still attached to the Draeger car and could not be removed manually. Barbara gave Patricia permission to take the Chevrolet Impala to drive to the parade. Barbara did not recall whether Patricia asked to use the car or "I simply told her she could use it". It was agreed that they would meet at the Ruby place after the parade ended.

After the parade Patricia drove to the Ruby place, but found no one there. She started back toward town and met Rick Ruby riding toward his home. He told her that Barbara and Zora had ridden up toward the college (Northern Montana College). Meanwhile Judy Madsen had driven her car to the Ruby residence. After waiting a few minutes longer, Patricia, Judy and Rick Ruby left in the Impala to look for Barbara and Zora. Patricia and Judy were anxious to return the horses. Judy testified, however, that they were "worried about the people" rather than the horses.

In any event, Patricia, Judy and Rick undertook the trip to look for Barbara, Zora and the horses. On this trip a collision occurred with a vehicle driven by Daniel McMillan, which resulted in the action Judy Madsen instituted for personal injuries against Patricia and McMillan.

Mrs. Freier testified that Barbara had the use of the car the day of the parade with her permission. Mrs. Freier attended the parade and saw Barbara

riding a horse. She had known in advance of Barbara's desire to ride in the parade but thought she was going to ride Rick Ruby's horse. She did not know of the arrangements made the morning of the parade for use of the Madsen horse, after Rick Ruby decided to ride his horse.

The plaintiff, National Farmers Union Property & Casualty Company, had issued an automobile liability policy to Patricia's father, Alfred V. Draeger. The defendant, State Farm Mutual Auto Insurance Company, had issued a policy to Barbara's father, Herbert Freier. It is admitted that Patricia is covered by her father's policy. Plaintiff contends, however, that State Farm's policy afforded primary coverage to Patricia, and that the coverage afforded by plaintiff's policy is "excess" by reason of the provision that "the insurance with respect to a * * * non-owned automobile shall be excess insurance over any other valid and collectible insurance". State Farm contends that Patricia was not an insured under its policy at the time of the accident and the policy did not afford her "valid and collectible insurance", and hence that she was insured only under the National Farmers policy.

The word "insured" as used in the State Farm policy, under bodily injury liability and property damage liability, includes:

(1) "the named insured" (Herbert Freier)

(2) "if the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household

(3) "If residents of the same household, the relatives of the first person named in the declarations, or of his spouse"

(4) "any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission"; and

(5) " * * * any person or organization legally responsible for the use of such owned automobile by an insured as defined under the four sections above.

Plaintiff contends that Patricia Draeger was an insured under provisions (3), (4) and (5) for the following reasons:

1. Express permission from Barbara Freier.

2. Implied permission or consent by Herbert Freier, named insured, and Mrs. Herbert Freier.

3. Operation of the Impala for the "benefit, advantage and use" of Barbara Freier.

4. Patricia Draeger was legally responsible for the use of the Impala as an extension of the actual permitted use from Barbara Freier.

Defendant State Farm contends (1) that Patricia was not using the Freier automobile with the permission either express or implied, of the named insured or his spouse; and (2) that she was not a person legally responsible for the use of the automobile by an insured.

Counsel for both parties have submitted extensive and helpful briefs, which set forth the divergent views in the construction of the so-called "omnibus clause" of automobile liability policies.

We start with the premise that an "omnibus clause, for reasons of public policy, is to be liberally construed". State Farm Mutual Automobile Insurance Company v. Williamson, 9 Cir. 1964, 331 F.2d 517, 519. The court continued by quoting with approval the following statement from Jurd v. Pacific Indemnity Company, 1962, 57 Cal.2d 669, 703, 21 Cal.Rptr. 793, 795, 371 P.2d 569, 571:

"Provisions for omnibus coverage in an automobile liability insurance policy reflects a legislative policy to protect the public when a motor vehicle is operated by one other than the insured owner with his consent. * * * In those jurisdictions where the insertion of an omnibus clause is required by statute in a liability insurance policy, it is liberally construed so as to effec-

tuate the manifest public policy of broadening the insurance coverage."

Montana has such a statute.[1]

■ The general rules to be applied in construing an omnibus clause were well summarized in 7 Am.Jur. 431, Automobile Insurance, Section 116, as follows:

"It has been frequently stated that, as a general rule, the permission given by the named insured to another to use the named insured's car does not authorize the permittee to allow a third party to use the car, and that if the permittee does allow a second permittee to use the car, such use is not 'with permission of the named insured' as those words are used in the omnibus clause. However the effect of this strict rule has been greatly diluted by reason of the fact that many of the courts recognizing the rule have substantially modified it by stating that in every case where the first permittee permits another to use the insured automobile, a factual determination must be made, whether the initial grant of permission was broad enough to include an implied grant to the permittee of authority to give another use of the automobile and thus render the latter an additional insured under the omnibus clause. Many courts have even gone one step further and hold that where the named insured grants his permittee broad and unfettered dominion over his insured automobile he also impliedly authorizes his permittee to allow a third person to use it, thus rendering the latter an additional insured. " * * * The adoption of a more liberal rule than the so-called 'general rule' is no doubt due in large part to the use of many automobiles as 'family cars.' Although, it is generally the husband who is the named insured, the wife frequently has equal access to or control of the car and it would be necessary to close one's eyes to reality to say that the wife does not have implied authority to permit the use of the car by a third party because technically she is only a permittee herself. The courts have recognized this status of the wife in a number of cases * * *

" * * * In the case of a minor child or relative of the named insured, however, the courts are understandably more reluctant to find implied authority to permit the use of the car by a third party. Where a car is purchased by the insured for the exclusive use of a minor, there is a split of authority between those courts holding that authority to delegate permission will be assumed from the fact that the permitee has general custody of the car and those holding that no such authority will be implied * * *."

Section 117 adds the following:

"The 'general rule' that a permittee may not allow a third party to 'use' the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is 'operating' the car for the 'use of the first permittee', and that such 'use' is within the coverage of the omnibus clause. While some courts apparently would limit this qualification of the general rule to situations where the named insured has not been specifically forbidden driving by a third person, it is more generally held that operation by a third person under

---

I. R.C.M.1947, § 53–438 reads in pertinent part:
"(b) Such owner's policy of liability insurance: * * * 2. shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, * * *"

such circumstances falls within the protection of the omnibus clause even where such operation is specifically forbidden by the named insured."

Do the facts bring this case within one of the exceptions to the general rule? It is clear that (1) the car was purchased for the use of Barbara and her sister; (2) for some time prior to the accident Barbara in effect had exclusive use of the car, permission from her parents to use it whenever she was permitted to leave home, and in particular permission to use the car the day of the parade; (3) her parents had specifically instructed her that she should not allow anyone else to drive the car; (4) Barbara on numerous occasions had violated these instructions, without her parents' knowledge; (5) Patricia had express permission from Barbara to use the car in driving to the parade; (6) Patricia was using Barbara's car because her own car had been used to obtain a horse for Barbara to ride in the school parade and had a trailer attached, which could not be removed by the girls; (7) the girls had agreed to meet at the Ruby place immediately after the parade; (8) Barbara and Zora did not return directly to the Ruby place but took an extra ride on the horses; (9) when Barbara and Zora did not return to the Ruby place and Patricia was informed by Rick Ruby that the girls were riding toward the college, Patricia and Judy left in Barbara's car to look for Barbara and Zora in the vicinity of the college; and (10) the accident occurred during this trip.

■ It is recognized that as a general rule the use of an automobile by a third person is not protected where the owner has expressly forbidden it. Where, however, the first permittee has "broad and unfettered dominion" over the insured automobile, under certain circumstances the permission of the insured may be implied. In particular, this is true where the operation by the second permittee serves some purpose of the first permittee.

■ There is no uniformity in the decisions,[2] and each case must be decided on its own particular facts. Neither party has cited any Montana case construing the "omnibus clause"; nor have they cited any case from another jurisdiction which is precisely in point. In the absence of a Montana case construing the omnibus clause in determining whether a vehicle is driven with the express or implied permission of the insured, I assume that the Montana court would adopt the so-called "liberal" rule followed in State Farm Mutual Automobile Ins. Co. v. Williamson, supra.

In Williamson[3] the Court of Appeals for the Ninth Circuit recognized the rule

2. Many courts and textwriters have categorized the conflicting decisions on the legal test for determining whether a vehicle is being driven with the express or implied permission of the insured within the meaning of the omnibus clause into three groups: (1) the strict or conversion rule; (2) the liberal rule; and (3) the moderate or minor deviation rule. American Universal Ins. Co. v. Dykhouse, 8 Cir. 1964, 326 F.2d 694, 696. See also 7 Appleman, Ins. Law & Practice, §§ 4366–4368.

3. I agree with counsel that this case is factually distinguishable. In Williamson, a 20 year old son was permitted to drive the family car. As here, the parents had expressly forbidden him to permit anyone else to drive. On a date with a next door neighbor, whom he later married, the son permitted the girl to drive, and the accident occurred while she was driving. There was evidence that the son had disregarded other instructions of the parents, with their knowledge. "He had, with his parents' knowledge, received several citations for speeding, and had been involved in two to four accidents. He had, without permission and contrary to instructions, taken the car to Mexico for an overnight trip. His parents knew of his pattern of disregard. While they testified that he had been disciplined for violation of the rules (including depriving him of the use of the car for brief periods), they had thereafter continued to allow him to use the car". There was no evidence that he had on prior occasions permitted anyone else to drive the car. The court held that it was for the jury to determine whether the operation by the girl was with the implied permission of the in-

that, "If an owner reasonably should anticipate that his permittee will put the car to a particular use, permission to operate the car, without more, can be found to encompass permission for that use". The court quoted with approval from Baesler v. Globe Indemnity Co., 1960, 33 N.J. 148, 162 A.2d 854, 856–857, as follows:

" * * *. The factual determination must be made, in every case where the first permittee permits another to use the insured automobile, whether the initial grant of permission was broad enough to include an implied grant to the permittee of authority to give another use of the automobile and thus to render the latter an additional insured under the omnibus clause of the policy.

"Thus, it is almost universally held in the modern cases that where the named insured grants his permittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes his permittee to allow a third person to use it, and thus to render him an additional insured. The first permittee, by being granted complete dominion over the insured automobile, is put in the shoes of the named insured, and therefore his permittee is held to be the named insured's permittee." 331 F.2d at 519–520.

In the Baesler case, the owner of the car immediately upon purchase turned it over to his nephew, a member of the insured's household under 21 years of age, for the nephew's exclusive use. The nephew was expressly prohibited by the named insured from permitting other persons to use the vehicle. At the time of the accident, the car was being driven by a friend of the nephew, with the nephew's permission. The friend was using the car for a social engagement of his own, and the nephew was not present. Under these facts the court in a four to three decision held that there was no coverage.[4]

The majority opinion emphasized the fact that the car was being used for the purpose of the second permittee and that there "was no benefit running to (the nephew, Rogers) other than the suggestion that (the second permittee's) use 'served Rogers' pleasure' ". The court recognized, however, that a different case would be presented if the vehicle had been used for some purpose of the nephew, saying in part:

"A different case would be presented where the named insured expressly forbade his permittee to allow anyone else to *operate* the insured vehicle, and contrary to these instructions the permittee allowed another to drive, but the *purpose* to which the vehicle was being put was within the scope of the initial permission. Such would be the case, for instance, where a father permitted his son to use the car for social engagements, and, while 'double-dating', the son, contrary to his father's orders, turned the wheel over to a fellow occupant. In those situations it has been held that even though the car was being *operated* contrary to the named insured's initial grant of permission, yet the driver is an additional insured because the *use* of the car was an authorized one." (Citing cases.) (162 A.2d at 857).[5]

sured, although the court stated that "it must be conceded that upon the record appellant's (insurer) case is a strong one, and that of appellees is extremely weak".

4. Both the majority and dissenting opinions contain excellent discussions of the problem, with citation of authorities in support of their respective views.

5. In a vigorous dissent, Chief Justice Weintraub, joined by two other justices, would have held the second permittee covered even in the absence of any showing of benefit to the first permittee. He

suggests that, "Although many reported decisions support the technical and unrealistic interpretation * * * advanced by the defendant, there is evidence of judicial determination to reach a common sense result." He thinks it better "to find the true purpose of the proviso, and having done so, then to say the intention of the parties would be defeated if the carrier could seize upon limitations or restrictions the named insured expressed for reasons wholly unrelated to insurance protection."

In Indemnity Ins. Co., etc. v. Metropolitan Cas. Ins. Co., 1958, 53 N.J.Super. 90, 146 A.2d 692, the New Jersey Superior Court had held that the omnibus clause requirement that actual use of the automobile be with the permission of the named insured relates only to the use of the vehicle and not to the identity of the person driving. In this case the automobile was being used for a purpose which the named insurer had authorized, but the insured, as here, had instructed his son, the first permittee, not to permit anyone else to drive the vehicle. Defendant distinguishes this and similar cases on the ground that the omnibus clause refers only to "actual use" and not to "operation and actual use" as in the instant case.

 No case has been cited construing the omnibus clause with the phrase "operation and actual use". Indemnity Ins. Co., etc. v. Metropolitan Cas. Ins. Co., refers to policies issued in former years providing that a person "seeking to qualify as an additional insured must show that he has permission to drive or operate the automobile from the named insured". It does not appear that the addition of the word "operate", without more, would change the result under the facts in the instant case. Moreover, where "there is an uncertainty or ambiguity in the contract it will be construed liberally in favor of the insured and most strictly against the insurer". Williams v. Insurance Company of North America, Mont.1967, 434 P.2d 395, and cases there cited.

In Williamson, the court also cited Brooks v. Delta Fire & Cas. Co. (La.App. 1955) 82 So.2d 55, where the "court concluded that the owner, who loaned the vehicle to his daughter for a trip to another city, could reasonably anticipate that if the daughter were unable or unwilling to continue driving she would seek to turn the driving over to a friend who would be accompanying her (with the father's knowledge) and that therefore the owner impliedly permitted driving by the friend on the way home when the daughter desired to stop driving to tend her baby". The named insured had on several occasions told his daughter not to let anyone else drive the car. In the Brooks case, the court said in part: "It may be added that Miss Deitz was driving because the original permittee had requested her to do so in order that the original permittee might attend to her child, and therefore in a sense her driving was for the benefit of the original permittee". (82 So.2d at 58).[6]

Moreover, as noted supra, it must be kept in mind that the omnibus clause in an insurance policy is for the benefit of the public as well as the insured. This was well expressed by the Appellate Court of Illinois in Hays v. Country Mutual Insurance Company, 1962, 38 Ill. App.2d 1, 186 N.E.2d 153, 156, the court saying in part: " * * * (T)here has been a growing tendency on the part of the courts the country over, to adopt a liberal view as to the coverage afforded by the omnibus clause of liability policies. Consideration has been given to the public generally. At best, the increased risk theory is unrealistic. The generally recognized approach of courts is that the coverages of auto liability policies are to be liberally interpreted to effect a purpose of the issuance of such policies, namely to provide indemnity to those who may suffer bodily injury, death or property damage by the negligent operation of motor vehicles. Such an approach reflects a clear cut policy to protect the public." [7]

---

6. See also Haspel v. Treece, La.App.1963, 150 So.2d 120, where the court said in part: " * * * (I)t may be possible for a second permittee to use the car, and become an insured under the policy, even though the name insured has prohibited the initial permittee from allowing anyone else to drive. This, of course, is entirely dependent upon the facts and circumstances involved in the particular case."

7. While protection is afforded here by plaintiff's policy if defendant's is not applicable, there are of course cases where protection would not be so afforded to injured persons.

Many cases are cited and discussed in the briefs and in turn distinguished factually by counsel for the other insurer. In the absence of any Montana case in point I have deemed it advisable to consider at some length the Ninth Circuit case most nearly in point and the cases there cited. These cases lead to the conclusion that under the circumstances of this case permission of the insured may be implied in view of the fact that the car was being driven for the purpose, benefit and advantage of the first permittee, even though she had been instructed by the insured not to permit others to drive the car.[8]

It is true that Patricia's initial use of Barbara's car was to transport Patricia to the parade. On the other hand, the only reason Patricia was using Barbara's car instead of her own was because the horse trailer was attached to Patricia's car; and the only reason the trailer was so attached was to transport a horse for Barbara to ride in the parade. Barbara's mother knew of Barbara's prospective participation in the parade and knew she was using the car, although Mrs. Freier understood that Barbara was going to ride another horse and did not know in advance of the arrangements made for the Madsen horse.

The parents had of course instructed Barbara not to let anyone else drive the car. Mr. Freier had also told Barbara he expected her "to use some sense and a little bit of judgment". Otherwise, Barbara had "unfettered dominion" over the insured automobile.[9] Under the circumstances, it is reasonable to assume that Barbara's parents would have approved the arrangement and authorized Patricia to operate the car had permission been requested in advance.

Patricia's use of the car in looking for Barbara, Zora and the horses was a reasonable extension of the use permitted by Barbara; and if anything this use was more directly for Barbara's benefit. When Barbara and Zora failed to return as promised, Patricia's concern and use of the car to look for them are understandable and reasonable.

This opinion may be considered as findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, although either of the parties may submit for consideration more specific findings of fact and conclusions of law consistent with this opinion. Plaintiff will prepare, serve and lodge form of judgment pursuant to Rule 11 of the local rules of court. ·

---

8. It is recognized that many courts have reached a contrary result.

9. In this respect the facts here make a stronger case for coverage than Williamson and other cases where the first permittee was using a "family car."