**Estelle GRAYSON et al., Plaintiffs**

v.

**NATIONAL FIRE INSURANCE COMPANY et al., Defendants,**

v.

**Andres Martis VELAZQUEZ et al., Third-Party Defendants.**

**Civ. No. 754-68.**

United States District Court, D. Puerto Rico.

June 8, 1970.

Harvey B. Nachman, San Juan, P. R., for plaintiffs.

Gonzalez & Rodriguez, for National Fire Ins. Co., San Juan, P. R., for defendants.

## OPINION and ORDER

CANCIO, Chief Judge.

This action was submitted to the Court on stipulations and upon a motion for Judgment on the Pleadings.

The uncontroverted facts are that on January 2, 1968 Mr. and Mrs. Grayson, domiciliaries of New Jersey were vacationing at the Holiday Inn Hotel in San Juan, Puerto Rico. At about 5:00 P.M. on that day, while riding in a Star Taxi cab operated by Agustín Rodríguez, cab operator's license number 2376, and while approaching said hotel they were involved in an accident. The accident occurred as they were turning on the Boca de Cangrejos road in order to enter the Holiday Inn Hotel. Although

the Graysons stated that they might have been struck in the rear, after recovering from the daze they saw no other vehicle and were immediately taken to Presbyterian Hospital for emergency treatment. Since treatment was then prescribed on a daily basis, they moved to the Howard Johnson Hotel in order to be near the doctors. Mr. Grayson had an insurance policy that included "non-insured motorist coverage" issued by American Casualty Company of Reading. Under the non-insured coverage Mr. Grayson was entitled to medical payments and to all damages if the liable party in an out of state (i. e. out of New Jersey) accident was either a hit and run driver or uninsured for liability coverage.

Both National Fire Insurance Company and American Casualty Company of Reading are part of the same insurance group, and are commonly owned and the claims departments are jointly run with a single banking account through the Harris Trust & Savings Bank in Chicago, Illinois. This group is known as the Continental National American Group (CNA). The medical payments were made by CNA and charged to policy number AS 2959574, which was the policy issued by American Casualty Company of Reading to the Graysons. Several checks were issued for the last of the medical payments marked "In payment of any and all claims." These checks were refused by Grayson's counsel until a check was received marked for "medical payments."

After suit was instituted, a deposition was held of the Puerto Rican Claims Manager of CNA. That deposition, along with the exhibits was made part of the stipulation. At the deposition, for the first time it was learned that the "unknown" car involved in the accident was in fact a "público", a special kind of franchise for carrying passengers for hire as permitted in Puerto Rico.

The defendants then filed a suit against the owner and driver of the público. There has been no appearance from the third party defendant, nor any assurance that it had a público policy in effect. Nevertheless, plaintiffs have assumed and stipulated that such a policy existed and was in effect.

On January 26, 1970 the above entitled action was called for trial. At that time both parties advised the Court they were willing to waive jury trial and stipulate the facts. In the opinion of both counsel there was but one controlling question of law which determined the entire outcome of the litigation, save the issue of damages. The parties further agreed to stipulate the damages, but that if damages could not be stipulated and the decision were in favor of the plaintiffs, a trial would be held on the issue of damages, only.

The case thus narrows to the issue of the liability of CNA through American Casualty Company of Reading under its "non-insured motorist coverage." Plaintiffs stipulated that as the accident is described in the police accident report, there is no liability on the part of Star Taxi or its insurer. Likewise, there is no longer any issue of a "hit and run" as described in the policy. The only issue, and it is a question of law, is whether the third party defendant is a non-insured motorist, within the meaning of the New Jersey statutes and the policy endorsement.

Under Part IV of said policy (Protection Against Uninsured Motorists), the term "uninsured automobile" is defined as

> "an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writ-

ing the same denies coverage thereunder."

Under the financial responsibility laws of New Jersey, New Jersey Statutes Annotation 39:6–46, self-insurance bonds or insurance policies in an amount not less than "$10,000.00, exclusive of interest and costs, on account of injury to or death of one person, and, subject to the same limit with respect to injury or death of one person of $20,000.00, exclusive of interest and costs, on account of one accident resulting in injury or death of more than one person * * *."

New Jersey also requires by law that all policies carry noninsured motorist protection for New Jersey insureds injured outside of New Jersey [N.J.S.A. 39:6–25. The insurance policy complies with this provision as well, by containing on page 18 a provision that reads:

> "NEW JERSEY—The insurance afforded by the Protection Against Uninsured Motorists Coverage with an automobile principally garaged in New Jersey does not apply to an accident occurring in New Jersey."

In the definitions contained in NJSA 39:6–62 an insured vehicle is defined as follows:

> " 'Uninsured motor vehicle' means a motor vehicle as to which there is not in force a policy meeting the requirements of sections 3, 24, 25, or 26 of the Motor Vehicle Security-Responsibility Law of this State, established pursuant to the provisions of chapter 173 of the laws of 1952,[2] as amended and

2.  Sections  39:6–25,  39:6–46,  39:6–47, 39:6–48.

> supplemented, and which is not owned by a holder of a certificate of self-insurance under said law."

Finally, New Jersey has a fund to pay New Jersey residents injured or killed in New Jersey by non-registered and non-insured vehicles (principally out-of-state drivers).

■ This statutory scheme is widespread in the United States and is remedial in nature, designed to afford the maximum protection to a state's resident. White v. Nationwide Mutual Insurance Company, 4 Cir. 1966, 361 F.2d 785; Nationwide Mutual Insurance Company v. Sours, 205 Va. 602, 139 S.E.2d 51 (1964); Pattani v. Keystone Insurance Company, 1966, 209 Pa.Super. 15, 223 A.2d 899; Andeen v. Country Mutual Insurance Company, 1966, 70 Ill.App.2d 357, 217 N.E.2d 814; Long, The Law of Liability Insurance, Vol. 2 § 24.09; Indemnity Ins. Company of North America v. Metropolitan Casualty Insurance Co. of New York, 53 N.J.Super. 90, 146 A.2d 692 (1958).

■ Under the New Jersey scheme any motorist who did not have the minimum limits required under New Jersey law is an uninsured motorist and the injured New Jersey motorist could then recover under his own policy. Selected Risks Insurance Company v. Zullo, 48 N.J. 362, 225 A.2d 570 (1966). See also similar treatment under comparable state laws. White v. Nationwide Mutual Insurance Company, supra; Calhoun v. State Farm Mutual Automobile Insurance Company, 1967, 254 Cal.2d 407, 62 Cal.Rptr. 177; Allstate Insurance Company v. Fusco, 101 R.I. 350, 223 A.2d 447 (1966); Carrignan v. Allstate Insurance Company, 108 N.H. 131, 229 A.2d 179 (1967); Cruzado v. Underwood, 39 Misc.2d 859, 242 N.Y.S.2d 74 (1963).

■ The público policy referred to does not qualify under the policy provision or under the New Jersey law as a liability policy.

Endorsement No. I of the público policy deletes the Bodily Injury Liability coverage and substitutes the insuring agreement which is not a liability policy at all. For the chauffeur, it provides a kind of combined accident and health and workmen's compensation coverage. For other persons it divides them into two classes—passengers and non-passengers and discriminates between them. Benefits are pursuant to a table that is akin to a schedule of losses in workmen's compensation or to medical insurance. Thus, under the definitions of the New Jersey

statute, and of the policy issued by American Casualty Company of Reading, the inescapable conclusion is that the público was an uninsured motor vehicle.

■ Cases from all over the United States uniformly hold that if the tortfeasor in an out-of-state accident has a policy with limits below the minimum requirements that the injured victim must maintain as liability or uninsured motorists coverage, then, in that event, the tortfeasor's policy is treated as nullity, and the victim is permitted to recover under his own policy for all damages up to the limits of liability contained therein. White v. Nationwide Mutual Insurance Company, 4 Cir. 1966, 361 F.2d 785; Taylor v. Preferred Risk Mutual Insurance Company, 1964, 225 Cal.2d 80, 37 Cal.Rptr. 63; Guthrie v. State Farm Mutual Automobile Insurance Co., D.S.C. 1968, 279 F.Supp. 837; Stevens v. American Service Mutual Insurance Co., 234 A.2d 305 (D.C.App.1967), Widiss, A Guide to Uninsured Motorist Coverage (1969) § 2.35 (pp. 71–73); 26 A.L.R.3rd 883.

Widiss writes in the cited section:

"§ 2.35 Inadequate liability insurance

A similar problem exists where the tortfeasor has insurance, but in a smaller amount than the uninsured motorist endorsement under which the insured claims. Since the uninsured motorist endorsement is normally written in the minimum amounts specified by the financial responsibility law applicable to the purchaser (an amount which varies from 5/10 to 15/30), this problem may arise either (1) where the tortfeasor's insurance does not conform to the amounts required by the financial responsibility laws applicable to his vehicle, or (2) where the tortfeasor has acquired insurance which satisfies the financial responsibility requirements of a state which sets a lower standard than that with which the insured's uninsured motorist endorsement complies.

In 1964, in what appears to be a case of first impression in California (and one of the first cases in the nation), a court held that if an out-of-state automobile did not carry sufficient insurance to satisfy the California financial responsibility laws (even though the owner did carry sufficient insurance to comply with the requirements of the state in which his vehicle was garaged) the automobile would be considered an uninsured motor vehicle in California. Several other courts have since reached the same conclusion.

In addition, by 1968 ten of the forty-six states which required the endorsement specifically adopted legislation defining an uninsured vehicle as one which does not have bodily injury insurance or bond in the minimum amount specified by the financial responsibility law of the state at the time of the accident. However, statutes in two other states (including California) still reflect the language of the 1956 standard endorsement (that is, 'the term "uninsured motor vehicle" means a vehicle as to which there is no bodily injury liability insurance applicable * * *').

The 1966 Definition. The 1966 standard form was modified so that an uninsured motor vehicle is now defined as 'a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amount specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident.' (Emphasis added). Although this definition provides satisfactory coverage in most cases, it still poses some problems.

For example, the situation may develop where an insured claimant is covered by an endorsement with lower protection than that meeting the financial responsibility laws of the state where the vehicle is presently garaged (that is, where the place of principal

garaging has changed during the term of the policy). In this case it might be unfair to hold the company to the higher limits.

Potentially far more important is the situation where a claim is made under an endorsement that has limits greater than that required by the financial responsibility laws of the state where the insured's automobile is principally garaged. It seems reasonable that in this case the insured should be able to take advantage of the higher limits of coverage—for which he has, after all, paid the premiums. It is therefore submitted that, for the purposes of this endorsement, a vehicle should be considered uninsured whenever the amount of insurance carried by its driver (the tortfeasor) is less than the limits of the uninsured motorist endorsement included in the insured's policy—so that the insured would be allowed to recover from his company (up to his policy limits) the amount by which his claim is in excess of the damages indemnified by the tortfeasor's insurance."

 Since the contract was made in New Jersey and meant to comply with New Jersey law, and recovery is sought only on a contractual basis, the New Jersey law applies. Puerto Rico had no uninsured motorist law. But similar policies were written in Puerto Rico and at page 19 of the policy it provides only that prior to suit in Puerto Rico the insured must comply with the terms of the policy. The Graysons have fully complied.

The insurance company contends that it is entitled to a set-off for the amounts that can be recovered from the uninsured motorist under the público policy. However, neither suit nor recovery against the uninsured motorist is a condition precedent to recovery and the policy herein contains a subrogation clause. The insurance company has had the right to pay the insured and to recover any amounts the insured might have been able to recover ever since claim was first made.

The foregoing shall constitute the findings of the Court pursuant to Rule 52 of the Federal Rules of Civil Procedure. After due deliberation being had upon the pleadings and stipulations contained herein, the Court concludes that, but for the alleged damages, there is no issue as to any material fact and that, as a matter of law, partial judgment should be entered in favor of the plaintiffs on the issue of liability. The parties are directed to advise the Court within ten days whether the damages have been stipulated, and if no stipulation is filed in said period, the matter will be set down for trial on the issue of damages only.

It is so ordered.