Janice Y. STEVENS, also known as Janice Stevens Hinds, Individually and as Administratrix of the Estate of Clinton Duane Stevens, Deceased, Appellant,

v.

AMERICAN SERVICE MUTUAL INSURANCE COMPANY, Appellee.

AMERICAN SERVICE MUTUAL INSURANCE COMPANY, Appellant,

v.

Janice Y. STEVENS, also known as Janice Stevens Hinds, Individually and as Administratrix of the Estate of Clinton Duane Stevens, Deceased, Appellee.

Nos. 4142, 4143.

District of Columbia Court of Appeals.

Argued June 5, 1967.

Decided Oct. 18, 1967.

Rehearing Denied Nov. 17, 1967.

James E. Hogan, Washington, D.C., with whom Arthur J. Hilland and Ferdinand J. Mack, Washington, D.C., were on the brief, for Janice Y. Stevens.

James F. Bromley, Washington, D.C., with whom James C. Gregg, Washington, D.C., was on the brief, for American Service Mutual Insurance Co.

Before HOOD, Chief Judge, MYERS, Associate Judge, and QUINN, Associate Judge, Retired.

MYERS, Associate Judge:

Janice Y. Stevens, hereinafter referred to as appellant, recovered judgments totaling $30,000 in the United States District Court for the District of Columbia for personal injuries to herself and her minor children and for the wrongful death of her husband suffered in an automobile collision caused by the negligence of a District of Columbia resident. The accident occurred in Virginia at a time when the Stevens family was residing in that state. Of the $30,000 judgments, $20,000 was satisfied by the defendant's insurance carrier, exhausting the limits of that company's coverage. The instant suit was then filed in the District of Columbia Court of General Sessions to recover the remaining $10,000 from the American Service Mutual Insurance Company (hereafter denominated appellee) which had issued a policy of liability on the car driven by appellant's husband at the time of the accident. Appellant alleges that the Virginia Uninsured Motorist Act makes appellee liable for the unpaid parts of the judgments.

Appellee's motion to quash the service of process on the theory that the court could not obtain personal jurisdiction over appellee was denied. The court did, however, grant summary judgment in favor of appellee while denying appellant's motion for summary judgment. All these rulings are challenged on these cross-appeals.

## I

■ The threshold question before us is whether the service of process was sufficient to confer jurisdiction over appellee in the District of Columbia Court of General Sessions. Appellant effected service by delivering a copy of the complaint to the Commissioners of the District of Columbia [1] pursuant to § 29-933i(c) D.C. Code (Supp.V 1966), on the theory that appellee is a foreign corporation doing business in the District without a certificate of authority. [2] Appellee contends that its local activities do not amount to "transacting business" [3] in the District and it is, therefore, not amenable to service within the terms of the statute.

■ Appellee's argument raises a difficult question since Congress has not enacted a modern long-arm statute to allow a court in the District to assume jurisdiction over a party whenever the minimum contacts necessary to satisfy the requirements, of due process are present. Instead, courts in this jurisdiction must resort to the older "doing business" concept which requires that a corporation be engaged in a regular course of business within the District in order to render it amenable to service of process. Traditionally, our courts have looked for certain tangible signs of corporate presence within the District as a basis for determining whether a corporation is transacting business locally.

---

1. Appellant also served copies of the complaint upon the Superintendent of Insurance and an independent firm of adjusters which appellee frequently hired to investigate and settle claims in the District. Because of our ruling that service upon the Commissioners was sufficient under § 29-933i(c) D.C. Code (Supp. V 1966), we do not reach the question of the adequacy of the other forms of service under any other sections of the Code.

2. § 29-933i(c) provides: "If any foreign corporation shall transact business in the District without a certificate of authority, it shall, by transacting such business, be deemed to have thereby appointed the Commissioners its agent and representatives upon whom any process, notice, or demand may be served. * * * "

3. As used in this statute, the term "transacting business" has been held to mean "doing business" and the two are used interchangeably. Bilbrey v. Chicago Daily News, 57 F.Supp. 579 (D.D.C. 1944).

Thus, where a corporation maintains offices, employees, bank accounts and telephone listings in the District, it is usually held to be transacting business in this jurisdiction. But there is no precise formula to be mechanically applied in deciding whether a particular corporation is doing business in the District.

> The concept of "doing business," although heavily laden with the traditional paraphernalia of bank accounts and telephone listings, in our view still has enough vitality to encompass newer ways of making a corporate presence felt in a particular place for the advancement of the corporation's essential business purposes. Washington v. Hospital Service Plan, 120 U.S.App.D.C. 211, 214, 345 F.2d 105, 108 (1965).

The absence of tangible indicia of corporate presence does not automatically mean that a corporation is immune from service of process if it is, in fact, carrying on a regular course of business here.

Appellee is an Alabama corporation writing automobile liability and related medical payments insurance. Its principal office is in Alabama. Normally appellee receives applications for policies by mail at its Alabama office, reviews the applications and mails contracts of insurance from Alabama to the accepted applicants. The policies are sent mainly to military personnel who may be stationed anywhere in the United States. Since its incorporation ten years ago, appellee has used this mailing procedure in issuing about twelve policies each year to residents of the District of Columbia, the most recent policy having been issued about two months after the present suit was filed. During the past decade, appellee has employed an independent adjusting firm in the District, on a case-by-case basis, to investigate and attempt settlement of approximately one hundred claims against its policyholders. In fulfilling its contractual obligations, appellee has also employed attorneys to defend actions against its policyholders in the courts of this jurisdiction. In the District Court negligence action which led to the present suit, a counterclaim was filed against appellee's insured and appellee retained both adjusters and attorneys to deal with that counterclaim.[4]

In our view these facts taken together are adequate proof that appellee maintains a "regular, continuous course of business" within this jurisdiction. Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 133, 134 F.2d 511, 515, 146 A.L.R. 926 (1943). We are less concerned with the quantity of appellee's business activity within the District than we are with the "quality and nature of the activity in relation to the fair and orderly administration of the laws." International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Appellee has clearly projected its corporate presence into the District in furtherance of its essential business purposes. That projection has been sustained and substantial enough to warrant the conclusion that, for jurisdictional purposes, appellee is transacting business in the District of Columbia. The fact that appellee chooses to carry on its essential business functions through independent contractors or agents whose authority is circumscribed and without renting office space in this jurisdiction does not compel a different conclusion. Appellee's primary business purposes are still being pursued at appellee's direction in the District of Columbia.

■■■ Appellee contends that even if contacts sufficient to confer jurisdiction over appellee do exist, service of process

---

4. See Kelberine v. Société Internationale, Etc., 124 U.S.App.D.C. 257, 261, 363 F.2d 989, 993, cert. denied, 385 U.S. 989, 87 S.Ct. 596, 17 L.Ed.2d 450 (1966), in which a foreign corporation's commencement of an action in a District of Columbia court was held sufficient to establish that corporation's presence in the District for the purpose of service of process.

ought to be quashed because neither party is a resident of the District. Presumably, this is intended as a *forum non conveniens* argument. The short answer to this contention is that the determination that a forum is inconvenient depends on a variety of factors and not merely the residence of the parties. Byrd v. Norfolk & Western Ry. Co., D.C.App., 194 A.2d 651 (1963). Appellee cannot enter into contractual arrangements to appear and conduct the defense of cases in District of Columbia courts where the introduction of evidence and the testimony of witnesses are usually required, and later claim that an action arising directly out of one such trial, in which nothing but legal argument is called for, is being conducted in an inconvenient forum.[5] That appellant could have filed her suit against appellee in several other jurisdictions does not foreclose her choice of the District of Columbia as her forum. We hold that the court below properly denied appellee's motion to quash service of process.

## II

■ We must next decide whether Virginia law ought to be applied in this case. This is a suit on a contract of insurance,[6] and Virginia is the primary place for the performance of that contract. The application for the policy and the premiums were mailed from Virginia to appellee's home office; the contract was sent into Virginia; and it insured residents of Virginia driving an automobile garaged in Virginia and used principally on Virginia highways. Regardless of the place in which the formalities of executing the contract were completed, Virginia clearly has the most significant contacts with the policy, and Virginia's law should govern.

We are faced, therefore, with two main questions: (1) Does Virginia have the power to extend its regulatory legislation to appellee? and (2) If Virginia does have that power, has it used that power in passing its uninsured motorist legislation? We believe both questions must be answered in the affirmative.

■ The use of Virginia's legislative power against mail order health insurance companies was upheld in Travelers Health Ass'n v. Com. of Virginia ex rel. State Corp. Commission, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950), and we know of no reason to apply a different rule here. Whether a state's interest in insurance policies is sufficient to justify regulatory action must be measured by "highly realistic considerations such as the protection of the citizen insured or the protection of the state from the incidents of loss," and not by "conceptualistic discussion of theories of the place of contracting or [the place] of performance." Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 63 S.Ct. 602, 605, 87 L.Ed. 777 (1943). By the most realistic criteria, Virginia has a strong definable interest in regulating policies like those distributed by appellee.

■ If a state's interest is strong enough to warrant the exercise of regulatory authority, that state may act to protect its interest although the "state action may have repercussions beyond state lines." Osborn v. Ozlin, 310 U.S. 53, 62, 60 S.Ct. 758, 761, 84 L.Ed. 1074 (1940). In exercising its power, the state may dictate the exact contents of every policy to which its authority extends. Osborn v. Ozlin, supra at 65, 60 S.Ct. at 762.

Appellant contends that the Virginia Uninsured Motorist Act applies to the kind of mail-order policies that appellee sells.

5. See McClanahan v. Trans-America Ins. Co., 149 Cal.App.2d 171, 307 P.2d 1023 (1957), for the argument that appellee, by the very nature of its business necessarily anticipated the likelihood that it would have to appear in the courts of any jurisdiction to which it sent a policy, and a *forum non conveniens* argument will not be available in any of those jurisdictions.

6. Rodgers v. Danko, 204 Va. 140, 129 S.E.2d 828 (1963).

Section 38.1–381(a) of the Virginia Code specifies that the statute applies to any policy or contract of bodily injury liability or of property damage liability insurance "arising from the ownership, maintenance or use of any motor vehicle * * * issued or delivered in this State to the owner of such vehicle" as well as to any policy "issued or delivered by any insurer licensed in this State upon any motor vehicle then principally garaged or principally used in this State."

Section 38.1–381(b) provides:

> Nor shall any such policy or contract relating to ownership, maintenance or use of a motor vehicle be so issued unless it contains an endorsement or provision undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within the limits which shall be no less than the requirements of § 46.1–1(8) * * *.

Section 46.1–1(8) requires a motorist to carry a minimum of $30,000 coverage for injury to two or more persons in a single accident. A motorist with less coverage is classified as an uninsured motorist.

▮▮▮ Appellant argues that the policy issued by appellee was "issued or delivered" in Virginia within the meaning of § 38.-1–381(a) and that appellee is therefore liable to her for the unpaid portion of the District Court judgments under subsection (b). Appellee, on the other hand, contends that the statute does not apply to this case because the policy was signed and mailed in Alabama and was therefore neither "issued" nor "delivered" in Virginia.

The purpose of the Uninsured Motorist Act is to provide adequate protection for the insured motorist, his family, and permissive users of his automobile against the perils of injury and loss from the uninsured motorist. State Farm Mut. Ins. Co. v. Drewry, 191 F.Supp. 852, 860 (D.C. W.D.Va.1961). The Virginia General Assembly has decided that nothing less than $30,000 for bodily injury to two or more persons in a single accident is adequate protection, and it has been repeatedly held that the statute, enacted for the benefit of injured parties, ought to be liberally construed so as to accomplish the legislative purpose. State Farm Mut. Auto. Ins. Co. v. Brower, 204 Va. 887, 134 S.E.2d 277 (1964). To say that a policyholder is deprived of the protection of the statute merely because some of the ceremonies of contracting were performed outside the borders of the state would, however, defeat the legislative purpose. In the light of the "mushroom growth of the mail-order insurance business" in this country, Schutt v. Commercial Travelers Mut. Accident Ass'n of America, 229 F.2d 158 (2d Cir. 1956); Ross v. American Income Life Ins. Co., 232 S.C. 433, 102 S.E.2d 743 (1958), it is inconceivable that a state enacting comprehensive protective legislation could have intended to exclude a substantial number of its citizens from the statute's protection on such technical grounds. We hold that the Uninsured Motorist Act does apply to the policy issued by appellee to appellant's late husband.

▮▮▮ It is well settled in Virginia that where § 38.1–381 requires any specific provision to be included in an insurance policy, that provision becomes a part of the policy even if it is not written on the face of the document issued by the insurer. Storm v. Nationwide Mut. Ins. Co., 199 Va. 130, 135, 97 S.E.2d 759, 765 (1957).[7] Even language inconsistent with the required provisions will not have the effect

7. For example: omnibus clause, Maxey v. American Cas. Co. of Reading, 180 Va. 285, 23 S.E.2d 221, 223 (1942); means of cancelling policy, Ampy v. Metropolitan Casualty Insurance Company of New York, 200 Va. 396, 105 S.E. 2d 839 (1958); notice requirements, State Farm Mut. Auto. Ins. Co. v. Duncan, 203 Va. 440, 125 S.E.2d 154 (1962).

of eliminating the statutory requirements. The statute by force of its provisions is made a part of the policy. Since the Uninsured Motorist endorsement is a mandatory provision by the terms of § 38.1–381, it was as much a part of the contract between appellee and appellant's intestate as any provision printed on the face of the policy.

It is our opinion that appellant established her right to recover against appellee the unsatisfied portions of the judgments rendered by the District Court. The trial court therefore erred in granting summary judgment in favor of appellee.

Summary judgment for American Service Mutual Company reversed, with directions to enter judgment for Janice Y. Stevens, individually and as administratrix, in the amount of $10,000, plus interest and costs.