# MAY VAN TASSEL AND OTHERS v. HORACE MANN MUTUAL INSURANCE COMPANY.

207 N. W. 2d 348.

May 11, 1973—No. 43653.

*Mordaunt, Walstad, Cousineau & McGuire* and *Harold J. W. Sweet,* for appellant.

*Albertson, Norton & Jergens, John V. Norton,* and *John E. Cass,* for respondents.

*Rider, Bennett, Egan, Johnson & Arundel, David F. Fitzgerald,* and *Wright S. Walling,* for Farmers Insurance Group of Los Angeles and United States Fidelity & Guaranty Company, amici curiae.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a declaratory judgment entered in favor of plaintiffs in an action brought to secure a judicial determination of the correct application of certain provisions of our uninsured-motorist statute to the insurance policies involved.

Prior to the rendition of the judgment by the trial court, the issues of the nature and extent of plaintiffs' damages and the liability of the uninsured motorist were submitted to an arbitrator who rendered an award in favor of Beltram Van Tassel for $12,000 with respect to his derivative claim for his son's injuries and in favor of Theodore Van Tassel, the injured claimant, in the sum of $21,000. The derivative claim of the mother, May Van Tassel, was denied.

By stipulation the parties reserved for trial by the court the issues involving the extent of the total liability of defendant insurer for the damages found by the arbitrator. The trial court ruled that the policy provisions relied upon by defendant were void and ordered judgment in favor of plaintiffs in the amount of $33,000.

The facts have been stipulated. They may be summarized as follows: Plaintiffs had four separate insurance policies issued by defendant on four vehicles owned by plaintiffs. Each policy contained $10,000 uninsured-motorist coverage per person. Plaintiffs paid a separately stated semiannual premium for this coverage on each policy.

Theodore Van Tassel, the son of plaintiffs May Van Tassel and Beltram Van Tassel, was injured on June 25, 1969, as a result of an accident with an uninsured motor vehicle. Theodore Van Tassel was a named insured within the definition of each of the four policies.

1. The case essentially involves a reconciliation, if possible, between restrictive provisions of the insurance contracts and our statute, Minn. St. 1967, § 72A.149,[1] which requires all policies of automobile insurance issued after the effective date of the statute to contain uninsured-motorist coverage. The question involved in this case is really whether the insurer's liability is limited to recovery in the amount of one policy, or whether each policy carries its own liability which can be used to "stack" coverage up to the full amount of plaintiffs' damages.

The restrictive policy provisions in each of the policies involved read:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV [relating to uninsured-motorist coverage] shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

---

[1] This statute has been subsequently amended and is now renumbered as Minn. St. 65B.22. The legislative changes are not relevant to the resolution of the questions presented in this case.

The relevant provision of our statutes is Minn. St. 1967, § 72A.149, subd. 1, which reads:

"*No* automobile liability or motor vehicle liability *policy* of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be delivered or issued for delivery* in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, including colliding motor vehicles whose operators or owners are unknown or are unidentifiable at the time of the accident, and whose identity does not become known thereafter, because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject in writing such coverage; and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer. The policy limits of the coverage required to be offered by this section shall be as set forth in Minnesota Statutes 1965, Section 170.25, Subdivision 3, until January 1, 1971; thereafter, at the option of the insured, the uninsured motorist limits shall be equal to those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry." (Italics supplied.)

Minn. St. 170.25, subd. 3, contained in the Safety Responsibility Act, provides in pertinent part:

"* * * [E]very such policy * * * is subject * * * to a limit, exclusive of interest and costs, of not less than $10,000 because of bodily injury to or death of one person in any one accident * * *."

There are two lines of authority construing statutes similar to ours and insurance provisions identical to those involved here. The problem posed by each is quite succinctly stated by the author of the annotation in 28 A. L. R. 3d 551, 554, as follows:

"A number of courts have held that 'other insurance' provisions, whether in the form of a 'pro rata,' 'excess insurance,' 'excess-escape,' or other similar clause, are invalid as a part of uninsured motorist protection, on the ground that the statute requiring every liability policy to provide this type of protection will not permit the insurer to provide in any way that the coverage will not apply where other insurance is also 'available,' despite the fact that the insured may thus be put in a better position than he would be in if the other motorist were properly insured. Other courts have stated, however, that the design and purpose of uninsured motorist statutes are to provide protection only up to the minimum statutory limits for bodily injuries, and not to provide the insured with greater insurance protection than would have been available had he been injured by an insured motorist, and have held that such 'other insurance' provisions are valid where they do not reduce coverage below the minimum statutory limits."

The cases pro and con are collected in this annotation. It would serve no useful purpose to discuss them here, as they are exhaustively discussed in the annotation. While those decisions representing the numerical weight of authority are not always the most persuasive, we are of the opinion in this case that the line of authority which appears to be developing into the majority rule offers the most convincing rationale. Those cases have held invalid restrictive insurance clauses such as those in this case.

Among the more persuasive decisions following the majority rule are Blakeslee v. Farm Bureau Mutual Ins. Co. 32 Mich. App. 115, 188 N. W. 2d 216 (1971), affirmed, 388 Mich. 464, 201 N. W. 2d 786 (1972), and Collins v. Motorists Mutual Ins. Co. 36 Mich. App. 424, 194 N. W. 2d 148 (1971). In Blakeslee, the

Michigan Court of Appeals said (32 Mich. App. 120, 188 N. W. 2d 218):

"* * * The statute directs in mandatory terms that every policy of insurance provide the requisite uninsured motorist protection unless it is rejected in writing by the insured. The insurer is, therefore, no longer free, as he had been prior to the statute, to insert language restricting the coverage to less than the statute requires."

In Stephens v. Allied Mutual Ins. Co. 182 Neb. 562, 571, 156 N. W. 2d 133, 139 (1968), the Nebraska court said:

"The general rule is that an insurer may not limit its liability under uninsured motorist coverage by setoffs or limitations through 'other insurance,' excess insurance, or medical payment reduction clauses, and this is true even when the setoff for the reduction is claimed with respect to a separate, independent policy of insurance (workmen's compensation) or other insured motorist coverage."

See, also, Protective Fire & Cas. Co. v. Woten, 186 Neb. 212, 181 N. W. 2d 835 (1970); Bose v. American Family Mutual Ins. Co. 186 Neb. 209, 181 N. W. 2d 839 (1970).

Apparently, the effort on the part of insurers has been to limit their liability to the minimum requirement under safety responsibility acts. In Widiss, A Guide to Uninsured Motorist Coverage, § 2.58, Professor Widiss states the problem as follows:

"* * * All of these provisions are written so as to limit the amount of payment by the uninsured motorist underwriter in combination with any other sources of indemnification to the maximum limit of the uninsured motorist coverage. The endorsement provisions are designed to achieve this result by reducing (or even eliminating) liability whenever more than one uninsured motorist coverage is applicable to the accident or whenever the insured is partly indemnified from other sources, such as workmen's compensation. From the standpoint of the insured, these provisions apply to two related, but at the same time dis-

tinctly different factual situations: First, where the damages sustained by the claimant exceed the coverage available from any single source; Second, where at least one of the available sources of indemnification exceeds the total damages. Each of these endorsement provisions has been drafted so as to apply with equal force to reduce the insurer's liability regardless of whether the claimant has been fully indemnified."

It seems to us that, in spite of the attempt by the insurer to limit its liability to one policy or to the amount recoverable under one policy, the fact that the legislature required an uninsured-motorist provision in all policies, added to the fact that a premium has been collected on each of the policies involved, should result in the policyholder's receiving what he paid for in each policy, up to the full amount of his damages. It is true that such holding results in permissible recovery exceeding what he would have received if the uninsured motorist had been insured for the minimum amount required under our Safety Responsibility Act. But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium.

We are convinced that the trial court correctly held that defendant is liable on each of the policies involved as far as uninsured-motorist liability is concerned.

2. Two of the four policies involved contained provisions for payment of medical expenses of the insured.[2] These provisions were separable areas of coverage for which plaintiff paid an extra premium charge. On their face, these provisions purported to pay all reasonable medical expenses incurred within one year of the accident without regard for the fault or lack of fault of the injured person or for whatever damages the injured person

---

[2] While the original stipulation stated that no medical expenses had been paid, this was amended to read: "[T]hat the defendant has paid $4,000.00 as medical payments for the injuries sustained by Theodore Van Tassel."

might recover from a tortfeasor. One of the clauses of the uninsured-motorist provisions of the policies, however, contains the following specific limitation of coverage when recovery is allowed under the medical-expense provisions:

"The company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Part II [which provides for medical expenses]."

Defendant contends that, if our decision permits recovery against all four policies under the uninsured-motorist provisions, its liability on the $33,000 judgment should, pursuant to the above-quoted clause, be reduced by the sum of $4,000 paid by defendant as medical expenses.

Professor Widiss has this to say:[3]

"While it still seems premature to talk in terms of majority-minority rules, there does appear to be a trend in the cases which favors denying the insurance company the right to deduct the amounts paid under the medical payment coverage from the uninsured motorist insurance where the damages exceed the insurer's liability—that is, where the claimant is not fully indemnified."

In this case, the limit of liability under all four policies exceeds the amount of damages, so Professor Widiss' statement may not be fully applicable. The question, however, is: Can the medical expenses paid be deducted from the damages when the liability under the policies involved exceeds the damages? In other words, does failure to deduct medical expenses from damages erroneously permit double recovery for such expenses?

We have long held that, in an action against a tortfeasor, insurance carried by the injured party does not diminish the

---

[3] Widiss, A Guide to Uninsured Motorist Coverage, § 2.62 (1971-1972 Supp.).

amount of recovery. Evans v. Chicago, M. & St. P. Ry. Co. 133 Minn. 293, 158 N. W. 335 (1916); State ex rel. City of Duluth v. District Court, 134 Minn. 28, 158 N. W. 791 (1916); Wentworth v. Butler, 134 Minn. 382, 159 N. W. 828 (1916); Solberg v. Minneapolis Willys-Knight Co. 177 Minn. 10, 224 N. W. 271 (1929); Dahlin v. Kron, 232 Minn. 312, 45 N. W. 2d 833 (1950); Dyson v. Schmidt, 260 Minn. 129, 109 N. W. 2d 262 (1961).

As we said in Donohue v. Acme Heating Sheet Metal & Roofing Co. Inc. 214 Minn. 424, 426, 8 N. W. 2d 618, 619 (1943):

"* * * [D]efendant cannot escape liability for his wrong because of insurance bought and paid for by plaintiff. The insurance was not carried for the benefit of defendant but for the protection of plaintiff. Consequently the existence of insurance was immaterial for the purpose of defeating recovery of damages."

There is no statutory mandate for medical coverage in automobile insurance policies. It is entirely optional with the insured whether or not he will purchase and pay for such coverage. A separate premium is charged where he does seek such coverage. Under these circumstances, we think the medical insurance is no different from insurance carried to cover similar expenses recoverable in any action against a tortfeasor. The uninsured-motorist coverage now required by our statute was intended to provide protection to one suffering damages at the hands of an uninsured tortfeasor. It is in effect a substitute for insurance that the tortfeasor should have had.

Turning to the precise question of the validity under our uninsured-motorist statute of the quoted clause, while we again find some authorities which seemingly support defendant's views, we think the most persuasive decisions hold otherwise. In the case of Keyes v. Beneficial Ins. Co. 39 Mich. App. 450, 454, 197 N. W. 2d 907, 909 (1972), the Michigan Court of Appeals quotes with approval the following excerpt from the deci-

sion of Tuggle v. Government Employees Ins. Co. 207 So. 2d 674, 675, 24 A. L. R. 3d 1343, 1345 (Fla. 1968) : [4]

"In view of the fact that the two classes of coverage [uninsured-motorist and medical] involved in the policy under consideration were contracted separately, with independent premiums, we are unable to distinguish this situation from that in [Sellers v. United States Fidelity & Guaranty Co. 185 So. 2d 689 (Fla. 1966)] relating to multiple carriers. Nor does there appear to be any basis for treating the set-off provision as amounting only to a contractual reduction of medical benefits, contrary to the actual language of the policy stating in the provision for uninsured motorist coverage that the company shall not be obligated to pay any part of such liability which represents expense 'payable' by the insurer under its medical benefits coverage. The clause on its face is one to decrease uninsured motorist coverage beneath the statutory minimum, and one which means that under certain conditions (medical benefits in excess of $10,000) there will be no uninsured motorist coverage whatever."

See, also, Bacchus v. Farmers Ins. Group Exchange, 106 Ariz. 280, 283, 475 P. 2d 264, 267 (1970).

We have not overlooked the case of National Union Fire Ins. Co. v. Grimes, 278 Minn. 45, 153 N. W. 2d 152 (1967), but we do not believe that case is applicable here. That case dealt solely with the right of an insurance company to recover medical payments pursuant to a subrogation clause which had enabled the insured to obtain medical coverage at a premium lower than that otherwise available. Here the limitation of coverage was directed to diluting the statutorily mandated uninsured-motorist coverage.

We are convinced that plaintiffs should get what they paid for and that medical coverage is a separate part of the contract

---

[4] See, Annotation, 24 A. L. R. 3d 1353, "Uninsured Motorist Insurance: Reduction of Coverage by Amounts Payable Under Medical Expense Insurance."

from uninsured-motorist coverage. The medical insurance was not bought and paid for by the insured for the benefit of the insurer. Consequently, medical insurance may not be used to dilute the statutorily mandated uninsured-motorist coverage.

Affirmed.