Lavinia HAGUE, Personal Representative
of the Estate of Ralph Alvin Hague,
Deceased, Respondent,

v.

ALLSTATE INSURANCE COMPANY,
Appellant.

No. 47874.

Supreme Court of Minnesota.

April 7, 1978.

On Rehearing Aug. 31, 1979.

Bell, Stapleton & Nolan, Mark M. Nolan and Peter J. McCall, St. Paul, for appellant.

Fred Burstein and Bruce J. Douglas, Minneapolis, Samuel H. Hertogs, Hastings, and William H. Kuretsky, Minneapolis, for respondent.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and David A. Stofferahn, Minneapolis and Stanley Karon, President, and Monte M. Miller, Chairman, St. Paul, for Minn. Trial Lawyers Assn.

Jack Davies, Professor of Law, St. Paul, for amicus.

Heard before ROGOSHESKE, TODD, and YETKA, JJ., and considered and decided by the court en banc; reheard and decided by the court en banc.

YETKA, Justice.

Appeal by defendant, Allstate Insurance Co., from an order of the district court granting plaintiff's motion for summary judgment and denying defendant's motion to dismiss.[1] We affirm.

The facts are not in dispute. The cause of action upon which this case is based arises out of an automobile and motorcycle accident which occurred on July 1, 1974, in Pierce County, Wisconsin, which is immediately adjacent to the border near Red Wing, Minnesota. Ralph A. Hague was a passenger on a motorcycle owned and operated by his son, Ronald Hague.

The Hagues were traveling west on State Highway No. 35, and they intended to turn left (to the south) onto a road that led to Elderwood Heights, Wisconsin. They slowed to an eventual stop and signaled their intention to make a left turn. While waiting for an eastbound car to pass in the oncoming lane, the motorcycle was struck from behind by an automobile owned and operated by Richard R. Borst, a resident of Ellsworth, Wisconsin. Ralph Hague died as a result of injuries sustained in this accident.

At the time of the accident, Ralph Hague resided with his wife, Lavinia Hague, in Hager City, Wisconsin, which is located just 1½ miles from Red Wing, Minnesota. Although Ralph Hague resided in Wisconsin, he was employed in Red Wing, Minnesota,

---

1. An order granting summary judgment is not appealable. Rule 103.03, Rules of Civil Appellate Procedure; *Johnson & Peterson, Inc. v. Toohey,* 289 Minn. 362, 184 N.W.2d 586 (1971). The trial court did not certify the question as important and doubtful. No judgment appears in the record and thus if the case were dismissed judgment would be entered and appeal time would then run. Because that course would simply delay the proceedings, the court exercises its discretionary review under Rules 102 and 105.01. See, *Morgan Co. v. Minnesota Min. & Mfg. Co.,* Minn., 246 N.W.2d 443 (1976).

and he had been employed in Red Wing for 15 years immediately preceding his death. After the accident, and prior to the initiation of the above entitled matter, Lavinia Hague moved her residence to Red Wing, Minnesota. On June 19, 1976, almost concurrently with the initiation of this action, Lavinia Hague was married to a Minnesota resident who operated an automobile service station in Bloomington, and established residence with her husband in Savage, Minnesota. The motorcycle which Ralph Hague was riding was owned by Ronald for about 1 year prior to the accident.

Ronald Hague owned other vehicles that were insured by Allstate, but his motorcycle was not insured. Richard Borst was without valid insurance coverage at the time of the accident.

Ralph Hague was insured at the time of the accident by Allstate, which had issued one policy to decedent that extended coverage to three automobiles Ralph Hague owned. A separate premium was paid for each automobile. The policy was effective as of June 8, 1974, and it provided for uninsured motorist coverage to a limit of $15,000 for each automobile.

On May 28, 1976, the Registrar of Probate for the County of Goodhue, State of Minnesota, appointed Lavinia Hague personal representative of the estate of her deceased husband, Ralph Hague. Subsequent to her appointment as personal representative, Lavinia Hague initiated the above-entitled action against Allstate.

Plaintiff is suing for declaratory relief construing the above indicated policy so as to "stack" the separate $15,000 uninsured motorist coverages on each automobile and therefore afford coverage in the total amount of $45,000. Questions of liability and amount of damages are not at issue in this proceeding, only the amount of coverage available. Plaintiff and defendant agree that if Minnesota law governs this case, "stacking" of the uninsured motorist benefits in the insurance policy is applicable.

Plaintiff's position is that:

(1) Minnesota courts have personal jurisdiction over all of the parties herein because plaintiff is a resident of Minnesota and was so prior to the commencement of this action, and defendant does business within Minnesota and is subject to personal service in this state; and

(2) Under the choice of law doctrine adopted by Minnesota courts, Minnesota law should be applied to the question of "stacking" the uninsured motorist provisions of the automobile insurance policy under which Ralph Hague was insured.

Defendant's position is that:

(1) The question of "stacking" should be determined by the Wisconsin courts, since the accident took place in Wisconsin, and involved all Wisconsin residents; and

(2) Wisconsin courts have not yet determined the question of "stacking" under their new law, and former decisions under the old law held against "stacking."

The issues presented by this appeal are:

(1) Did the trial court abuse its discretion in refusing to dismiss the complaint on the ground of forum non conveniens?

(2) Does Minnesota or Wisconsin law apply to determine whether uninsured motorist coverage may be "stacked"?

We have three choices for a decision in this case: (1) We could hold that clearly the case ought to be declined in Minnesota and referred to Wisconsin for trial; (2) we could hold that the case was properly tried in Minnesota but Wisconsin law ought to apply; or (3) we could hold that the case should be tried in Minnesota under Minnesota law. We find the third course of action appropriate in this case for the reasons set forth herein.

1. Forum non conveniens.

Minnesota courts in their discretion may decline jurisdiction over transitory causes of action brought by nonresident citizens or noncitizens of this state when it fairly appears that it would be more equitable to have the case tried in another available court of competent jurisdiction. *Johnson v.*

*Chicago, B. & Q. Railroad Co.,* 243 Minn. 58, 66 N.W.2d 763 (1954). Although the cases speak of nonresidents, it does not appear that the distinction between residents and nonresidents is crucial, except insofar as it bears on the relative convenience of the parties.[2] The important factors to be considered in invoking the rule of forum non conveniens were set out by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947), as follows:

" * * * [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

▮▮ The present action was one for declaratory judgment which did not require witnesses. Plaintiff is a resident of this state and defendant does extensive business within the state. See, *Stevens v. American Service Mutual Ins. Co.,* 234 A.2d 305, 307 (D.C.App.1967). The decedent worked in Minnesota for 15 years and drove to and from his home in Wisconsin. A personal representative was appointed in Minnesota, and there is no showing that a personal representative was appointed in Wisconsin. The only "inconvenience" is that Minnesota law, if applied, might be more liberal than Wisconsin law. There does not appear to be harassment or oppression involved in this lawsuit.

We do not, however, decide the issue of whether a district court may decline jurisdiction over a resident's cause of action because, even if it may, there was no abuse of discretion here in refusing to dismiss the case. The mere fact that Wisconsin law may be different from Minnesota law is not sufficient reason to decline jurisdiction. *Myers v. Government Employees Insurance Co.,* 302 Minn. 359, 367, 225 N.W.2d 238, 241 (1974); *Chubbuck v. Holloway,* 182 Minn. 225, 234 N.W. 314, 868 (1931).

2. Choice of Laws.

Defendant argues that even if Minnesota retains jurisdiction, Wisconsin law should be applied to prohibit "stacking" of the uninsured motorist coverage. Plaintiff contends that Minnesota law applies, but that there is no true conflict because Wisconsin law permits stacking.[3]

In *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973), this court adopted a methodology of analysis for resolving conflicts of laws questions.[4] The analysis involves the following "choice-influencing considerations" (295 Minn. 161, 203 N.W.2d 412): (1) predictability of result, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest, (5) application of the better rule of law. Before applying the five factor analy-

---

2. *Fourth N. W. Nat. Bank v. Hilson Industries, Inc.,* 264 Minn. 110, 117 N.W.2d 732 (1962), decided that under the circumstances of that case there was no jurisdiction over a nonresident corporation. The case applied principles of due process and forum non conveniens and the "residency" of the plaintiff was not considered. The language of other Minnesota cases could be construed to require the court to retain jurisdiction over suits properly brought by resident plaintiffs, but cf. *Savchuk v. Rush,* Minn., 245 N.W.2d 624, 630 (1976), vacated and

remanded on other grounds, 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1086 (1977), which indicates that resident plaintiffs are subject to forum non conveniens.

3. The parties agree that if Minnesota law is applied, then stacking is permitted.

4. The approach adopted was taken from the proposal made by Professor Robert Leflar in *Choice-Influencing Considerations in Conflict Law,* 41 N.Y.U.L.Rev. 267.

sis, the court must first determine whether the choice of one law will be "outcome determinative," i.e., whether there is an actual conflict. *Myers v. Government Employees Ins. Co. supra.* Thus if Wisconsin law would allow stacking, then the choice of law question need not be reached and the result reached by the trial court should be affirmed.

(a) Conflict of law.

The first question which we must determine is whether there is a conflict between the interests of Minnesota and Wisconsin in the present case. Interests of Wisconsin, in the present case, are grounded in the residence of the plaintiff at the time of the accident and making of the contract. The Wisconsin Supreme Court has articulated its state policy of insuring *minimum* recovery on the part of victims of uninsured motorists. *Nelson v. Employers Mutual Cas. Co.,* 63 Wis.2d 558, 217 N.W.2d 670 (1974). This policy may be based in part on a desire to keep insurance premiums low while providing some protections against uninsured motorists.

Minnesota contacts with the facts of the case begin with plaintiff's residence at the time of suit, defendant's license to do business, and defendant's conduct of business in the state. There is no indication that plaintiff moved to Minnesota in an effort to forum shop. Thus, as the justice administering state, Minnesota has at least one significant contact.[5] If this were an ordinary contract case, as defendant suggests, the analysis of Minnesota interest might end with the observation that Minnesota has an interest in maximizing the tort recovery of plaintiffs who are involved in accidents involving uninsured motorists. This policy is clearly articulated in the Minnesota stacking cases beginning with *Van Tassel v. Horace Mann Mutual Ins. Co.,* 296 Minn. 181, 207 N.W.2d 348 (1973). The stated governmental interest is grounded in a policy of compensating injured plaintiffs to the maximum extent of their injuries, even where this recovery is greater than minimum requirements.[6]

Minnesota contacts with and interest in the facts of the present case are, however, more extensive because the contract involved is one concerning automobile liability insurance. Insofar as the contract is one of indemnity for tort recovery, the kinds of contacts relevant to tort cases may be considered. The facts show that plaintiff's decedent traveled to work in Minnesota for 15 years. Thus, the risk which was covered by the policy was located in Minnesota as well as Wisconsin.

One additional interest, not addressed by the parties, is Minnesota's interest in the administration of estates. According to the stipulated facts, plaintiff was appointed personal representative of her husband's estate by a Minnesota court. The plaintiff as an heir resides in Minnesota. This interest was recognized in *Travelers Ins. Co. v. Davis,* 490 F.2d 536 (3 Cir. 1974). The court applied Pennsylvania law in upholding an arbitrator's decision which allowed stacking. The suit was brought by the executor of a Pennsylvania decedent's estate on a policy issued in Massachusetts for a death occurring in Texas. In the present case, the interests of Wisconsin are stronger than those of Massachusetts in *Travelers Ins. Co.*

---

5. This interest was recognized in *Milkovich v. Saari,* 295 Minn. 155, 165, 203 N.W.2d 408, 415 (1973), in the court's approving of the reasoning of *Kell v. Henderson,* 47 Misc.2d 992, 263 N.Y.S.2d 647 (1965), affirmed, 26 A.D.2d 595, 270 N.Y.S.2d 552 (1966).

6. Several jurisdictions have applied the law of the place of contracting to interpret uninsured motorist provisions: *Brooks v. Pennsylvania Manufacturers' Assn. Ins. Co.,* 62 N.J. 583, 303 A.2d 884 (1973) (New Jersey residence insufficient contact to apply New Jersey law where

policy issuance, accident, and pending workers compensation claim was in Pennsylvania); *Travelers Ind. Co. v. Stearns,* 116 N.H. 285, 358 A.2d 402 (1976) (accident occurring in New Hampshire insufficient to apply New Hampshire uninsured motorist law where policy issued in Massachusetts to Massachusetts resident for car principally garaged in Massachusetts); *Grayson v. National Fire Ins. Co.,* 313 F.Supp. 1002 (D.Puerto Rico, 1970) (in New Jersey law applied in Puerto Rico accident where policy was issued to New Jersey residents in New Jersey).

*v. Davis, supra,* because the decedent resided there, but nonetheless Minnesota has substantial contacts and interests.[7]

■ Although the interests of the two states coincide to the extent that both seek compensation of the victims of accidents involving uninsured motorists, they diverge on the policies and interests underlying stacking. The Minnesota interest in full compensation for residents injured by uninsured motorists is sufficient to allow the application of Minnesota law if otherwise warranted.

The question of whether Wisconsin law permits excess insurance clauses and thus limits stacking is difficult because the Wisconsin Supreme Court has never ruled on the issue under the statute in force at the time this policy was written. Neither the briefs nor the arguments of counsel, however, persuade us that the legislature or the Supreme Court of Wisconsin would overrule the decision in *Nelson v. Employers Mutual Cas. Co. supra,* in which the court upheld the validity of such clauses.[8] Thus, we find that Wisconsin law, in effect at the time of the writing of the policy, allowed "excess insurance" clauses and that stacking would not be permitted if Wisconsin law were to apply.

(b) Choice of Law.

■ Defendant argues that application of the five tests mandate application of Wisconsin law. It argues that predictability of result, interstate order, and advancement of the forum's governmental interest mandate this result. Plaintiff argues, and the trial court agreed, that the *Milkovich* line of cases involving foreign torts makes the advancement of the forum's govern-

mental interest and better rule of law the only relevant considerations. The discussion of interests is based on the peculiar hybrid nature of the problems involved in automobile liability insurance cases. The analysis should determine the choice of laws by examining both tort and contract considerations.

(1) Predictability of Results.

Defendant argues that this factor favors application of Wisconsin law because the insurer of a vehicle is concerned with setting of standard rates. Plaintiff argues that this analysis is mistaken insofar as defendant was reasonably to be presumed to travel in Minnesota and insofar as Minnesota law would clearly apply if the accident had occurred in Minnesota. This consideration weighs slightly in defendant's favor, but the fact that one cannot predict automobile accidents because they are unplanned makes predictability of results less important in automobile liability insurance cases than in other contract cases.

(2) Maintenance of Interstate Order.

This concept requires that the state whose laws are ultimately applied have sufficient contacts with the facts in issue. *Milkovich v. Saari, supra; Schwartz v. Consolidated Freightways Corp.,* 300 Minn. 487, 221 N.W.2d 665 (1974), certiorari denied, 425 U.S. 959, 96 S.Ct. 1740, 48 L.Ed.2d 204 (1976). As stated above, the contacts of both states are substantial. Leflar points out that retaliation by one state for mere forum preference of another state may also be considered in a decision to apply non-forum law where forum contacts are minimal. Leflar, *Choice—Influencing Considerations in Conflict Law,* 41 N.Y.U.L.Rev. 267, 287.

---

**7.** The contacts of the plaintiff with Minnesota are *less* substantial than those of the plaintiff in *Gillen v. United Services Auto. Assn.,* 300 So.2d 3 (Fla.1974), in which the Florida Supreme Court applied its law favoring stacking to an insurance policy entered into in New Hampshire. In *Gillen* the plaintiff and decedent had moved to Florida prior to the accident and the accident occurred in Florida. Thus, the risk of the policy had little substantial relation to New Hampshire. In the present case the risk was located primarily in Wisconsin, but was also located in Minnesota.

**8.** The legislative history of the statute is unclear. Wis.Stat.1967, § 204.30(5) (now Wis. Stat. 632.32(3)) was amended several times. The effect of these amendments is unclear, but the present statute is essentially the same as that construed in *Nelson v. Employers Mutual Cas. Co.,* 63 Wis.2d 558, 217 N.W.2d 670 (1974).

In the present case, if the contacts with Minnesota were less substantial, this would be a stronger consideration. Under this heading the court may also consider whether or not application of Minnesota law will encourage forum shopping. (Ibid.) This would also be a strong consideration in the present case if there was any evidence that plaintiff had moved to this state for the purpose of bringing suit. This consideration thus does not require application of Wisconsin law.

(3) Simplification of the Judicial Task.

The parties appear to agree that this issue is irrelevant because there is an applicable Wisconsin statute which this court is capable of interpreting.[9]

(4) Advancement of the Forum's Governmental Interest.

Minnesota's governmental interest will most clearly be advanced by application of Minnesota law. The state's interest in fully compensating resident accident victims and thus keeping them off welfare rolls and enabling them to meet financial obligations will be met most adequately by allowing stacking. The advancement of Minnesota's interest is only partially inconsistent with the advancement of Wisconsin's in that Wisconsin is interested in giving the plaintiff some recovery, but at minimum limits.

The factual contacts with this state are more limited than the contacts which mandated application of Minnesota law in *Schwartz v. Consolidated Freightways Corp. supra.* In *Schwartz* the plaintiff, injured in Indiana, was a lifelong Minnesota resident and employed by a Minnesota corporation at the time of the accident. Because the present case involves a third-party insurance beneficiary rather than a plaintiff personally injured in an accident, we are not convinced that the Minnesota contacts are, in themselves, sufficient to

mandate application of our law. Thus, we must consider the remaining factor.

(5) The Better Rule of Law.

This consideration clearly mandates application of Minnesota law. Minnesota follows a majority of jurisdictions in allowing stacking and this fact has been recognized by the Wisconsin Supreme Court. *Nelson v. Employers Mutual Cas. Co.,* 63 Wis.2d 558, 217 N.W.2d 670. Although majority status is not by itself sufficient to make a rule "better," the decisions on stacking are fairly recent and well considered in light of current uses of automobiles. Additionally, the line of decisions in Minnesota which favors stacking is impliedly based on the premise that the rule allowing stacking is the better rule of law.[10] We believe that it is preferable to compensate victims of accidents to the full extent of their injuries, and we believe that is the policy adopted by the legislature. The Minnesota rule is better because it requires the cost of accidents with uninsured motorists to be spread more broadly through insurance premiums than does the Wisconsin rule.

The trial court is affirmed.

PETERSON, Justice (concurring specially).

I concur only because the result follows from the court's decision in *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973).[1]

OTIS, Justice (dissenting).

At the time of this accident all of the drivers, owners, and passengers in both vehicles were residents of Wisconsin, the contracts of liability insurance on the vehicles were written in Wisconsin, and the accident occurred in Wisconsin. For the reasons stated in the dissent in *Savchuk v. Rush,* Minn., 245 N.W.2d 624, 630 (1976), vacated

---

9. This would be clearer if the Wisconsin Supreme Court had expressly ruled on the issue.

10. In *Van Tassel v. Horace Mann Mutual Ins. Co.,* 296 Minn. 181, 207 N.W.2d 348 (1973), this court expressly stated that the most convincing

rationale on stacking was offered by cases which held restrictive clauses invalid.

1. For a critical analysis of that decision, see, Comment, 58 Minn.L.Rev. 199.

and remanded, 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1086 (1977), I can not agree that the rights of the parties should be determined by Minnesota law.

## ON REHEARING

YETKA, Justice.

Appellant moved this court for a rehearing after the case was originally heard and decided. The petition having been granted, the case was reheard en banc on December 12, 1978. Upon reconsideration by the court, we are of the opinion that since there was no manifest error of fact, the case was fully argued, and no new issues of fact or of law have been presented, there has been no adequate reason presented to the court which justifies a reversal.

By way of further explanation for its earlier decision, the court is of the opinion that the questions of jurisdiction and conflict of laws must be separated. We are of the opinion that there is no real question of jurisdiction of the Minnesota court. Where plaintiff is a resident of the state and decedent's estate is probated in Minnesota, defendant does business in this state and was properly served with process, the Minnesota court has jurisdiction of the case.

The only remaining question is whether Wisconsin or Minnesota law should be applied on the question of "stacking" insurance coverage. For all of the reasons stated in our original opinion and for the additional reason that contracts of insurance on motor vehicles are in a class by themselves and must be so treated, we believe Minnesota law was properly applied. When an insurance company doing business in a number of states writes a policy on an automobile, the company knows the automobile is a movable item which will be driven from state to state. The company, therefore, accepts the risk that the insured may be subject to liability not only in the state where the policy is written, but also in states other than where the policy is written, and that in many instances those states will apply their own law to the situation. See *Clay v. Sun Insurance Office, Ltd.*, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964). Such a contract is not like the usual commercial transaction where the law of the state where the contract is made should and does play a more important role. Application of Minnesota law in this case is, therefore, not so arbitrary and unreasonable as to violate due process.

OTIS, Justice (dissenting).

I agree with the majority that this case presents no serious question of jurisdiction. The only issue is one of choice-of-law. Although I share the view that the Minnesota rule permitting stacking is better law than the Wisconsin rule which denies it, I cannot accept the position that the application of Minnesota law does not deprive the defendant of a constitutional right to the protection of its "justified expectations." Neither the original opinion nor the supplemental opinion which followed reargument, deals with the constitutional problems inherent in depriving the defendant of the right to invoke the more favorable Wisconsin rule.

Mr. Justice Black and Mr. Justice Brennan have commented on the similarity between the constitutional questions presented in cases dealing with choice of law and those governing jurisdictional problems. In *Hanson v. Denckla*, 357 U.S. 235, 258, 78 S.Ct. 1228, 1242, 2 L.Ed.2d 1283, 1300 (1958), Mr. Justice Black, dissenting, noted:

"* * * True, the question whether the law of a State can be applied to a transaction is different from the question whether the courts of that State have jurisdiction to enter a judgment, but the two are often closely related and to a substantial degree depend upon similar considerations."

More recently, in *Shaffer v. Heitner*, 433 U.S. 186, 224, 97 S.Ct. 2569, 2591, 53 L.Ed.2d 683, 710 (1977) Mr. Justice Brennan, concurring in part and dissenting in part, stated:

"* * * I recognize that the jurisdictional and choice-of-law inquiries are not identical. * * * In either case an important linchpin is the extent of contacts between the controversy, the parties, and the forum state. While constitutional

limitations on the choice of law are by no means settled, * * * important considerations certainly include the expectancies of the parties and the fairness of governing the defendants' acts and behavior by rules of conduct created by a given jurisdiction,"

citing Restatement, Conflict of Laws 2d, § 6. The Restatement, § 6, Comment g, defines the problem as follows:

> "g. *Protection of justified expectations.*
>
> This is an important value in all fields of the law, including choice of law. Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state. Also, it is in part because of this factor that the parties are free within broad limits to choose the law to govern the validity of their contract * * * and that the courts seek to apply a law that will sustain the validity of a trust of movables * * * ."

The accident which gave rise to this litigation occurred on July 1, 1974, in Pierce County, Wisconsin, when a motorcycle owned and operated by Ronald Hague, on which his father, Ralph Hague, was a passenger, collided with an automobile owned and operated by Richard Borst. Ralph Hague died as a result of that collision. The Hagues, father and son, and Borst, were all residents of Wisconsin at the time of the accident. Both vehicles were licensed and garaged in the State of Wisconsin.

Neither vehicle was covered by insurance. However, the decedent had a single policy of insurance written by the defendant which extended coverage to three automobiles owned by decedent in Wisconsin on which three separate premiums were paid. That policy provided for uninsured motorist coverage up to $15,000 for each of the three automobiles owned by decedent. The insurance contract was entered by the defendant and the decedent in the State of Wisconsin, the premiums were paid in the State of Wisconsin, and the policy was retained in the State of Wisconsin.

The decedent's only connection with Minnesota was his employment in this state, but at no time prior to his death did either he or his family live in this state. His widow subsequently moved to Minnesota following her remarriage. She was appointed representative of his estate in Minnesota, and brought this action against defendant which does business in Minnesota.

In our decision in *Van Tassel v. Horace Mann Mutual Ins. Co.*, 296 Minn. 181, 207 N.W.2d 348 (1973) our court unanimously held that an insured who pays premiums on more than one policy is entitled to stack the benefits covered by each policy under its uninsured motorist coverage. On the other hand, under the law of Wisconsin as enunciated by its Supreme Court in *Nelson v. Employers Mutual Cas. Co.*, 63 Wis.2d 558, 217 N.W.2d 670 (1974) stacking of the kind sought in this case is denied.

At the outset it should be noted that no case has been called to our attention, and we are aware of none, which applies the better choice-of-law principle to a case such as this, where at the time of the occurrence there were no contacts whatever with the forum state other than a place of employment which played no part in the events giving rise to the litigation. The majority relies strongly on our decision in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973). In that case we applied Minnesota law rather than the law of Ontario where the parties all resided. However, in so doing we cited as dispositive on the question of Minnesota's interest the fact that the accident occurred in Minnesota as well as the fact that plaintiff was hospitalized for well over a month in this state. We said:

> "The compelling factors in this case are the advancement of the forum's governmental interests and the application of the better law. * * * We might also note that persons injured in automobile accidents occurring within our borders can reasonably be expected to require treatment in our medical facilities, both public and private. In the instant case, plaintiff incurred medical bills in a Du-

luth hospital which have already been paid, but we are loath to place weight on the individual case for fear it might offer even minor incentives to 'hospital shop' or to create litigation-directed pressures on the payment of debts to medical facilities. Suffice it to say that we recognize that medical costs are likely to be incurred with a consequent governmental interest that injured persons not be denied recovery on the basis of doctrines foreign to Minnesota." 295 Minn. 170, 203 N.W.2d 417.

Significantly neither of these factors is present in the case before us. The accident did not happen in Minnesota, and whatever economic loss resulted to the decedent's survivors occurred only in the State of Wisconsin.

More nearly in point is our decision in *Bolgrean v. Stich*, 293 Minn. 8, 196 N.W.2d 442 (1972). The factors we there specified as determining the applicable law compel a finding in this case that the "center of gravity" is in Wisconsin. In *Bolgrean*, Minnesota law was applied where the plaintiff was a resident of North Dakota and the accident occurred in South Dakota. The considerations which governed our application of Minnesota law located the "center of gravity" and were described by us as being (1) the state where the driver and the owner of the vehicle causing the injuries was a resident, here Wisconsin; (2) the state where that vehicle was garaged, licensed, and insured, here Wisconsin; (3) the state where the injured party lived most of her life and was a resident at the time of the accident, here Wisconsin; and, (4) the state where the trip which resulted in the injury was initiated, here Wisconsin. See, 293 Minn. 10, 196 N.W.2d 444. We further noted in *Bolgrean* that "the only party concerned with predictability is the insuror of the host's vehicle," *Id.*, here the defendant. That insuror, we said, must be assumed to have charged rates applicable to the state of the owner's residence, again the State of Wisconsin.

Every factor which governed our decision in *Bolgrean* applies to the facts of the instant case, plus two additional elements not present in *Bolgrean*, namely the fact the decedent was not a resident of the forum state and the accident did not occur in the forum state.

It seems to me wholly inconsistent for us now to ignore all of the criteria we set forth in *Bolgrean*. The only question in *Bolgrean* and *Milkovich* was whether Minnesota had sufficient interest in the litigation to apply this state's better rule of law. *Bolgrean* makes clear the conditions under which we will apply the Minnesota law in derogation of the law of a different state and I submit none of those conditions has been met in the instant case.

Only passing reference is made by the majority to the decisions of the U.S. Supreme Court which deal with the constitutional problems involved in applying the better rule of law. Lest there be any doubt about the viability of *Home Ins. Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930) and *Hartford Accident and Indem. Co. v. Delta & Pine Land Co.*, 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178 (1934) both of those cases were referred to and distinguished in *Clay v. Sun Insurance Office, Ltd.*, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964).

In *Dick*, the Supreme Court held that an insuror was denied due process where a Texas statute of limitations permitted a fire insurance claim to be made against the insuror in a Texas court, at a time when the claim was barred by a statute of limitations in Mexico where the loss occurred.

In the *Hartford* case, a Connecticut insuror contracted with a Mississippi corporation in Tennessee for a fidelity bond which required claims to be made within 15 months after termination of the suretyship. A Mississippi court struck down that condition and was reversed by the U. S. Supreme Court, which held:

"The Mississippi statutes, so construed, deprive the appellant of due process of law. A state may limit or prohibit the making of certain contracts within its own territory * * *; but it cannot extend the effect of its laws beyond its

borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made. * * * Nor may it in an action based upon such a contract enlarge the obligations of the parties to accord with every local statutory policy *solely upon the ground that one of the parties is its own citizen.*

" * * * [A state] may not, on grounds of policy, ignore a right which has lawfully vested elsewhere, if, as here, the interest of the forum has but slight connection with the substance of the contract obligations. * * * A legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the forum regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment." 292 U.S. 149, 54 S.Ct. 636, 78 L.Ed. 1181. (Citations omitted, italics supplied.)

The residence element on which the majority in this case strongly relies was brushed aside in the *Dick* case where the Supreme Court said:

" * * * The fact that Dick's permanent residence was in Texas is without significance. At all times here material he was physically present and acting in Mexico. Texas was, therefore without power to affect the terms of contracts so made. Its attempt to impose a greater obligation than that agreed upon, and to seize property in payment of the imposed obligation violates the guaranty against deprivation of property without due process of law." 281 U.S. 408, 50 S.Ct. 341, 74 L.Ed. 933.

In the instant case the plaintiff was at all times here material physically present in Wisconsin. In denying recovery in the *Dick* case the court held that Texas "may not abrogate the rights of parties beyond its

borders having no relation to anything done or to be done within them." 281 U.S. 410, 50 S.Ct. 342, 74 L.Ed. 935.

What is to me the key issue, the after-the-fact residence of plaintiff in Minnesota, was unequivocally treated as "without significance" in the *Dick* case. That conclusion was reaffirmed in the *Clay* case where a unanimous court stated that the *Hartford* and *Dick* decisions "were cases where the activities in the State of the forum were thought to be too slight and too casual as in the * * * [*Hartford* case], to make the application of local law consistent with due process, *or wholly lacking* as in the *Dick* case." 377 U.S. 181, 84 S.Ct. 1198, 12 L.Ed.2d at 231–32. (Italics supplied.) A footnote quotes, among other things, the sentence set forth above that "the fact that Dick's permanent residence was in Texas is without significance." 377 U.S. 182 n. 5, 84 S.Ct. 1199, 12 L.Ed.2d 232. In the light of the Supreme Court's recent approval of that rule, giving no effect whatever to after-the-fact residence, I submit that the underpinnings of the majority rule have no constitutional support. In justifying the application of Minnesota law to a Wisconsin accident involving Wisconsin residents, the original majority opinion recites, among other things:

"Minnesota contacts with the facts of the case begin with plaintiff's residence at the time of suit * * *. Thus, as the 'justice administering state' Minnesota has at least one significant contact.

* * * * * *

"The Minnesota interest in full compensation for her residents injured by uninsured motorists is sufficient to allow the application of Minnesota law if otherwise warranted."

If, as the United States Supreme Court has consistently held, residence of a party is not to be considered in choice-of-law cases, clearly there is nothing left on which to base the application of Wisconsin law in this case.[1]

---

1. Both the dissent and footnote 2 of the original majority opinion refer to *Savchuk v. Rush*, 311 ... Minn. 480, 245 N.W.2d 624 (1976). That case also dealt with after-the-fact residency for pur-

The rights of this defendant, which are in my opinion constitutionally protected, were vested at the time it entered its contract for insurance with the decedent in Wisconsin prior to July 1, 1974. At that time stacking had been held unavailable by the Wisconsin court in its *Nelson* decision filed May 20, 1974. Defendant had a right to rely on that decision in fixing its rates and in actuarially assessing its exposure. Where the contract was entered into in Wisconsin by Wisconsin residents, who were exposed primarily to Wisconsin hazards, and the loss which could be anticipated did in fact occur in Wisconsin and was wholly unrelated to the hazards of any other state, defendant had a right to rely on the application of Wisconsin law. The Restatement, Conflict of Laws 2d, § 188, Comment b, states the case well:

> " * * * Parties entering a contract will expect at the very least, subject perhaps to rare exception, that the provisions of the contract will be binding upon them. Their expectations should not be disappointed by application of the local law rule of a state which would strike down the contract or a provision thereof unless the value of protecting the expectations of the parties is substantially outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied. The extent of the interest of a state in having its rule applied should be determined in the light of the purpose sought to be achieved by the rule *and by the relation of the transaction and the parties to that state * * *.*" (Italics supplied.)

Granted that the Minnesota rule of law is better, in the absence of any substantial interest by this state in the subject of the litigation, our intrusion into the rights of those who have transacted business in good faith elsewhere verges on meddling in the judicial policy of a sister state if we deny

the legitimate expectations of a contracting party by applying Minnesota law on the fragile grounds here asserted.

Accordingly, I would reverse.

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Justice OTIS.

poses of acquiring jurisdiction. On appeal to the U. S. Supreme Court the judgment of our court was vacated and the case remanded (433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d (1086 [1977]) for further consideration in light of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). On remand, the majority of this court adhered to its prior decision, 272 N.W.2d 888 (Minn.1978). On February 21, 1979, the U. S. Supreme Court noted probable jurisdiction, 440 U.S. 905, 99 S.Ct. 1211, 59 L.Ed.2d 453 (1979), but has not yet rendered its decision.